DUHÉ, Circuit Judge:
 

 Raising a variety of challenges, Harris, Shackleford, and Townsend appeal their convictions for conspiracy to manufacture methamphetamine, a violation of 21 U.S.C. § 846. All appellants contend that the district court erred in admitting evidence of their pre-indictment drug activities, and in denying their motion for severance. All three further contend that the trial court improperly instructed the jury on multiple conspiracies, erred in refusing to suppress evidence seized in a warrantless search of Townsend’s car, and incorrectly applied the
 
 *1528
 
 sentencing guidelines. Appellant Townsend also challenges the sufficiency of the evidence supporting his conviction. Finding all contentions meritless, we affirm.
 

 Facts and District Court Proceedings
 

 This tale of murder, mayhem, and methamphetamine recounts the activities of the appellants and several others as they traveled across Texas manufacturing and distributing methamphetamine. Their story begins in 1987, when Harris and Townsend began their manufacturing activities in Marshall, Texas. Although Harris then lived in Houston, he would travel to Marshall, “cook” up a batch of methamphetamine with Townsend, and then deliver the finished product to his Houston distributor, Rick Boettcher. Local authorities eventually became suspicious of the goings-on there, executing a search warrant and seizing the tools of their trade in mid-1988.
 

 Near the end of that same year, appellant Wendell Shackleford and his brother Eric, former associates of Harris, purchased an abandoned rendering plant and an attached residence near Hamilton, Texas. Wendell and his wife adopted the residence as their home, establishing a methamphetamine lab in the old plant. Although Eric obtained some of the manufacturing supplies on his own, Harris also provided needed chemicals, traveling between Hamilton and Houston with his companion-for-hire, Rebecca Burnette. On a few occasions, Harris, Burnette, and Wendell met at a motel, where the chemicals were delivered. On other occasions, Harris and Burnette met Boettcher at the motel, exchanging the Shacklefords’ finished product for money. Pursuant to Harris’s instructions, Burnette would then send money orders to Eric in payment for the drugs.
 

 Occasionally, Harris and Burnette met Townsend in Marshall, where undeterred by the earlier raid, he apparently continued to deal in precursor chemicals. On at least one occasion, Burnette and Harris met Townsend in Hamilton, where the chemicals were exchanged for a certified check made payable to Townsend. Another such delivery was waylaid when Townsend was stopped for a traffic violation, and found to be in possession of precursor chemicals and drugs.
 

 By mid-1989, the activities at the old rendering plant had aroused the suspicions of the Hamilton constabulary. Agents conducted surveillance, and obtained and executed a search warrant. Their efforts were fruitful: the abandoned plant indeed concealed a full-scale methamphetamine laboratory. The search uncovered a large amount of glassware and equipment, some of which bore the fingerprints of Harris and the Shacklefords, mounds of chemical precursors, and some methamphetamine product. The agents also uncovered the usual array of packaging supplies, as well as a copy of “The Anarchist’s Cookbook,” a handy reference source providing not only the recipes for illicit drugs, but also useful tips on weapons and evading surveillance.
 

 Coincidentally, the agents noted Eric making frequent trips to two trailers in Colorado City, Texas, and soon confirmed that the trailers were registered in the name of his company. Pursuant to a search warrant, the agents discovered yet another methamphetamine laboratory, this one in its embryonic stage, its glassware, equipment, and chemicals not yet in use.
 

 The manufacturing scheme began to unravel with the arrest of Eric in mid-1989. Soon thereafter, agents raided Harris’s Houston home, where they discovered drug paraphernalia, chemical price lists, and a photo album containing pictures of Harris and Townsend engaged in their manufacturing activities. When Townsend’s house in Marshall was searched, the agents found, in a closet reeking of phenylacetic acid, methamphetamine product, manufacturing paraphernalia, and lists of chemical precursors and suppliers. The agents also found various forms of fake identification, including phony birth certificates, military discharge papers, and blank driver's license applications.
 
 [1]
 
 The agents also discovered
 
 *1529
 
 numerous receipts, including one from a $700 money order payable to Harris dated September 13, 1988.
 

 The scheme finally came to a close in late 1989, when Wendell Shackleford was arrested, armed with a .45 caliber handgun. A search of his residence also produced methamphetamine product, other weapons, and ammunition.
 

 The appellants were indicted on one count of conspiracy to manufacture methamphetamine, a violation of 21 U.S.C. § 846.
 
 [2]
 
 Wendell Shackleford was also indicted on one count of using and carrying a weapon during a drug conspiracy, a violation of 18 U.S.C. 924(c)(1), and one count of being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1).
 
 [3]
 
 From a verdict convicting them on those charges, the appellants take this appeal.
 

 I.
 

 Each appellant filed a separate brief, noticing different points of error from those of his co-appellants. Later, our court granted the appellants’ motions to adopt the arguments raised by their co-appellants. See Federal Rule of Appellate Procedure 28(i). This practice is permitted in the interest of judicial efficiency when the arguments to be adopted are
 
 equally applicable
 
 to the adopting co-appellants. However, when one appellant raises a challenge to the sufficiency of the evidence supporting
 
 his
 
 conviction, we find that a motion to adopt that appellant’s argument, without more, is insufficient to raise that point of error as to the adopting co-appellant. Logically, the same reasoning applies to other fact-specific contentions, such as minimal participant status or criminal history ratings under the guidelines. Accordingly, we consider the merits of those contentions only as to the party raising them.
 

 Sufficiency of the Evidence
 

 Townsend contends that the bulk of the evidence adduced at trial tends to prove his involvement in activities not charged in the indictment, such as those occurring in Marshall in 1987. Accordingly, he submits that there is insufficient evidence to support his conviction. We disagree.
 

 In reviewing a challenge to the sufficiency of the evidence, this court must determine whether “a rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt.”
 
 United States v. Carrasco,
 
 830 F.2d 41, 43 (5th Cir.1987). It is not necessary that the evidence exclude every hypothesis of innocence, and “a jury is free to choose among reasonable constructions of the evidence.”
 
 United States v. Bell,
 
 678 F.2d 547, 549 (5th Cir.Unit B 1982). We view all inferences and credibility choices in the light most favorable to the government.
 
 Glasser v. United States,
 
 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).
 

 In a conspiracy prosecution, the government must prove beyond a reasonable doubt (1) the existence of an agreement between two or more persons to violate the narcotics laws, (2) that each alleged conspirator knew of the conspiracy and intended to join it, and (3) that each alleged conspirator did participate in the conspiracy.
 
 United States v. Magee,
 
 821 F.2d 234, 238-39 (5th Cir.1987). Proof of any element may be by circumstantial evidence, and “a common purpose and plan may be inferred from the development of ‘a collocation of circumstances’.”
 
 United States v. Marx,
 
 635 F.2d 436, 439 (5th Cir.1981) (citations omitted).
 

 There is ample evidence to support the conclusion that Townsend and Harris cooperated in drug manufacturing activities in Marshall in 1987. Although
 
 *1530
 
 that conduct was not charged in the indictment, evidence of a pre-existing relationship between parties is relevant in determining whether they were engaged in a conspiracy.
 
 United States v. Ruiz,
 
 860 F.2d 615, 618 (5th Cir.1988). Burnette testified that she and Harris took delivery of the precursor chemicals from Townsend, and delivered them to the Hamilton laboratory. Such a transaction is verified by the money order receipt found in Townsend’s residence, the date of which corresponds with the Hamilton operation. Bur-nette also testified that Townsend made at least one delivery of chemicals to Hamilton, supporting the inference that he knew the location of the laboratory. Even though Townsend’s destination the night he was stopped by police was not conclusively established by the evidence, the jury was entitled to infer, from Townsend's prior activites, that he was intending to rendezvous with Harris and Burnette.
 

 Although Eric Shackleford conceded that he did not recognize Townsend when he saw him in jail, that testimony does not affect our appraisal. As our court has noted, “a conviction will not be reversed for lack of evidence that the defendant was acquainted with, or knew all the co-conspirators .... ”
 
 United States v. Garcia,
 
 917 F.2d 1370, 1376 (5th Cir.1990). The jury could have reasonably concluded that Townsend knowingly participated in the Hamilton manufacturing scheme. We will not disturb its verdict.
 

 Evidence of Pre-Indictment Activities
 

 The appellants contend that the trial court erred in admitting evidence of Townsend and Harris’s methamphetamine manufacturing activities in Marshall. Characterizing that conduct as “extraneous,” they argue that the evidence was inadmissible under Federal Rule of Evidence 404(b). Reviewing the trial judge’s evidentiary ruling for an abuse of discretion,
 
 United States v. Fortenberry,
 
 919 F.2d 923 (5th Cir.1990), we find no error.
 

 While evidence of prior bad acts is inadmissible to prove character, Rule 404(b) permits the use of such evidence to prove knowledge or intent, as long as its probative value exceeds any potential prejudicial effect.
 
 United States v. Beechum,
 
 582 F.2d 898, 911 (5th Cir.1978) (en banc),
 
 cert. denied,
 
 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). Clearly more than character was at issue in this case, since intent and knowledge are statutory elements of the crime charged. As to the relative probative value of the evidence, our court has previously held that proof of prior drug activities is more probative than prejudicial.
 
 See e.g., United States v. Stephenson,
 
 887 F.2d 57, 59 (5th Cir.1989),
 
 cert. denied,
 
 — U.S. -, 110 S.Ct. 1151, 107 L.Ed.2d 1054 (1990);
 
 United States v. Henthorn,
 
 815 F.2d 304, 308 (5th Cir.1987).
 

 In this case, the evidence detailed nearly identical manufacturing activities by these defendants approximately one year prior to the acts alleged in the indictment. Furthermore, the district court gave a limiting instruction to the jurors, admonishing them to consider the evidence only for the purpose of determining knowledge or intent.
 
 See United States v. Fortna,
 
 796 F.2d 724, 736 (5th Cir.),
 
 cert. denied,
 
 479 U.S. 950, 107 S.Ct. 437, 93 L.Ed.2d 386 (1986). We find no abuse of discretion.
 

 Joinder and Severance
 

 Harris contends the trial court erroneously denied his motion to sever his case from those of Shackleford and Townsend. Harris contends he was prejudiced by evidence of Shackleford’s firearms offenses and Townsend’s assorted drug activities. We are unmoved.
 

 We note that the defendants were properly joined in the indictment, since “[a] charge of conspiracy initially legitimizes joinder of all defendants.”
 
 United States v. Lindell,
 
 881 F.2d 1313, 1318 (5th Cir.1989), ce
 
 rt. denied,
 
 — U.S. -, 110 S.Ct. 1152, 107 L.Ed.2d 1056 (1990). As to the severance motion, reviewing that decision for an abuse of discretion,
 
 id.,
 
 we find no error in the district court’s refusal to sever. The firearms evidence presented at trial related to acts committed by Shackleford alone. We cannot conjecture, nor does Harris suggest, how the jury could have
 
 *1531
 
 confused that evidence with the drug conspiracy evidence.
 
 See United States v. Rocha,
 
 916 F.2d 219, 229 (5th Cir.1990) (where severance was not warranted because weapons evidence was clearly inapplicable to other defendants).
 

 Similarly, we find no prejudice from the fact that evidence of Townsend s drug activities was heard as well. Harris presents no basis for his allegations of prejudice, asserting instead that the evidence “had to have adversely affected [his case].” As noted above, that evidence was admissible under Rule 404(b). Furthermore, the trial judge carefully instructed the jury to consider the evidence of guilt separately as to each defendant.
 
 [4]
 
 Our court has held that similar instructions neutralize any prejudicial effect against a co-defendant. Accordingly, we conclude that “the jury could sort out the evidence reasonably and view ... the evidence relating to [each] defendant separately.”
 
 United States v. Merida,
 
 765 F.2d 1205 (5th Cir.1985). We uphold the trial court’s ruling.
 

 Multivle Consviracies
 

 The appellants complain that although the indictment alleged only one conspiracy, the evidence adduced at trial tended to prove the existence of multiple conspiracies. Accordingly, they suggest that the district court erred when it refused to instruct the jury as to multiple conspiracies. We find no error in the trial court’s instruction.
 

 In reviewing a claim of error for failure to give a requested multiple conspiracies instruction, our Court considers whether there is
 
 any
 
 evidence to support the issuance of the charge.
 
 United States v. Erwin,
 
 793 F.2d 656, 662 (5th Cir.),
 
 cert. denied,
 
 479 U.S. 991, 107 S.Ct. 589, 93 L.Ed.2d 590 (1986). Reviewing the record, it appears the district court concluded the multiple conspiracies instruction was unwarranted. However, in choosing to issue the Pattern Jury Charge, the trial court instructed the jury as follows:
 

 You must determine whether the conspiracy charged in the indictment existed, and if it did, whether the defendant was a member of it. If you find that the conspiracy charged did not exist, then you must return a not guilty verdict, even though you find that some other conspiracy existed. If you find that a defendant was not a member of the conspiracy charged in the indictment, then you must find that defendant not guilty, even though that defendant may have been a member of some other conspiracy.
 

 Thus, irrespective of what the trial court intended to do, its use of the Pattern Jury Instruction provided the jury with adequate guidance on the multiple conspiracies issue. Because we review the jury instruction only to determine whether “the charge, as a whole, is a correct statement of the law and ... clearly instructed the jurors as to the principles of law applicable to the factual issues confronting them,”
 
 United States v. Stacey,
 
 896 F.2d 75, 77 (5th Cir.1990), we find no error.
 

 The Penalty Provisions of 21 U.S.C. § 841
 

 The appellants argue that the indictment should have been dismissed on the ground that the inconsistent penalty schemes
 
 [5]
 
 in 21 U.S.C. § 841 render the statute vague, and thus violative of their Fifth and Fourteenth amendments rights. We disagree.
 

 In this regard, we are bound by a recent decision of our court that addresses the very issue raised by the appellants. In
 
 United States v. Shaw,
 
 920 F.2d 1225 (5th
 
 *1532
 
 Cir.),
 
 cert. denied,
 
 — U.S. -, 111 S.Ct. 2038, 114 L.Ed.2d 122 (1991), an appellant charged with possessing 117 grams of methamphetamine argued that the conflicting penalty schemes failed to give him adequate notice of the penalty to which he would be exposed. While acknowledging Shaw’s constitutional entitlement to such notice,
 
 United States v. Batchelder,
 
 442 U.S. 114, 123, 99 S.Ct. 2198, 2203, 60 L.Ed.2d 755 (1979), the court noted that “overlapping sentencing provisions satisfy the notice requirements of the Due Process Clause so long as they clearly define the conduct prohibited and the punishment authorized.”
 
 Shaw,
 
 920 F.2d at 1228 (citations and internal quotation marks omitted). Construing the statute in favor of the most lenient punishment, the court dismissed Shaw’s contention, noting that his six year sentence fell within the range of the lesser punishment provision, and thus he suffered no injury.
 

 The reasoning in Shaw is equally applicable here. The statute surely apprised the appellants of the illegality of their manufacturing activities, and although both penalty provisions were applicable, they knew they were exposed to at least a ten year minimum sentence under the most lenient provision. Because the district court employed the most lenient penalty range, we likewise find no error in the district court’s refusal to dismiss the indictment.
 

 The Motion to Suppress
 

 Much of the tangible evidence introduced against Townsend was seized during a search of his automobile while he was presumably en route to deliver chemicals to Harris. Townsend filed a motion to suppress that evidence, arguing that the initial stop was pretextual. He now contends that the district court’s denial of that motion was improper. Reviewing the district court’s factual findings and credibility choices at the suppression hearing for clear error,
 
 United States v. Shaw,
 
 894 F.2d 689, 691 (5th Cir.),
 
 cert. denied,
 
 — U.S. -, 111 S.Ct. 85, 112 L.Ed.2d 57 (1990), we uphold its decision.
 

 At the suppression hearing, the deputy sheriff who stopped and searched Townsend’s car testified as to the events leading up to the stop and search. While on routine traffic patrol in a well-lit area, he spotted a car whose occupants were not wearing seat belts, a violation of Texas law. As the deputy was questioning Townsend, the familiar and distinctive odor of methamphetamine wafted out of the car, justifying a search of the vehicle. Townsend gave the officer permission to search the trunk, where he discovered methamphetamine product and chemical precursors.
 

 Although he does not contest the validity of the search and seizure, Townsend contends that the initial stop must have been pretextual since it would have been difficult for the officer to spot the seat belt violation from his vantage point. Other than this conclusory statement, however, Townsend suggests no illegal motive for the stop, nor does he suggest any other reason why the officer stopped the car. We also note that even if the officer
 
 had
 
 an ulterior motive, the fact that there was an objectively reasonable basis for his actions validates the stop.
 
 See United States v. Causey,
 
 834 F.2d 1179 (5th Cir.1987). The district court properly denied the motion to suppress.
 

 II.
 

 The appellants raise several challenges to the district court’s application of the sentencing guidelines. The standard of review regarding guideline sentencing is statutorily defined. The sentences assessed must be upheld unless the appellants demonstrate that they were imposed in violation of the law, as a result of an incorrect application of the guidelines, or were outside the range of the applicable guidelines and were unreasonable. 18 U.S.C. § 3742(e);
 
 United States v. Ebertowski,
 
 896 F.2d 906 (5th Cir.1990). This court must give “due regard to the opportunity of the district court to judge the credibility of witnesses” by accepting its findings of fact unless they are clearly erroneous. 18 U.S.C. 3742(e). Beyond even the clearly
 
 *1533
 
 erroneous standard, this court must give “due deference to the district court’s application of the guidelines to the facts.”
 
 United States v. Woolford,
 
 896 F.2d 99 (5th Cir.1990).
 

 Murder and Mayhem
 

 Shackleford argues that the district court improperly enhanced his sentence for the firearms offense under section 2K2.1 based on its finding that he committed murder during the course of the drug conspiracy. He submits that the district court erred in concluding that the killing was unjustified, and that the government failed to apprise him of its intent to seek an enhanced sentence. We are unpersuaded.
 

 The district court based its decision on the following grisly facts disclosed in the presentence report (PSR). Suspecting that Jack Wiltrout, a participant in the Hamilton methamphetamine project, was skimming some of the product for himself, Eric and Wendell Shackleford decided to confront him with their accusations. Admittedly attempting to portray themselves as “tough, mean, and a little bit crazy,” the Shackle-fords proceeded to Wiltrout’s lab in a nearby county. The appellant Wendell laid in wait in the shadows, armed with a .45 caliber handgun. Eric confronted Wiltrout, and an argument ensued. Purportedly thinking Wiltrout was “reaching for a bayonet,” Wendell emerged from hiding, fatally wounding him with a single bullet to the head. The brothers then wrapped Wiltr-out’s body in a carpet, and loaded it along with equipment, chemicals, and other items into Wiltrout’s truck. Finally, the Shackle-fords set the lab ablaze in an effort to make it look like Wiltrout had absconded. Returning to their lab in Hamilton, the brothers broke the body’s arms and legs, stuffed it into a 55-gallon bottomless drum, and placed it over a metal grating. There, they burned the body with propane tanks for two days. The coroner was able to verify the identity of the charred remains through the use of dental records, and by correlating a piece of eyeglass found in the ashes with the type and prescription worn by Wiltrout.
 

 Based upon these facts, the district court imposed a life sentence upon Shackleford. This was done pursuant to section 2K2.-1(c)(2), which provides that when calculating the defendant’s sentence for a firearms offense, the court should cross-apply section 2X1.1 “if the defendant used or possessed the firearm in connection with commission or attempted commission of
 
 another offense.”
 
 The cross-referenced section, 2X1.1(c)(1), provides that when the other offense is “expressly covered by another offense guideline section, apply [the more specific] guideline section.” Because murder is specifically addressed by section 2A1.1, the district court applied that section and imposed the mandatory life sentence upon Shackleford. We find no error in the district court’s decision.
 

 We first reject Shackleford’s contention that the events described above support a finding of justifiable homicide, since the killing was done in defense of a third person. Shackleford ignores the precept of criminal law that in order to invoke the doctrine of justifiable homicide, “[i]t is generally necessary that neither the person defended nor the defender be at fault in bringing on the difficulty.” 40 C.J.S. Homicide § 108 p. 968. Shackleford not only sought out his victim and laid in wait for him, but with the help of his brother, provoked the argument that resulted in his death. We find no clear error in the district court’s conclusion that the killing was unjustified.
 

 We also reject Shackleford’s argument that he received inadequate notice of the government’s intent to seek enhancement of his sentence under section 2K2.1. He notes that the government initially informed him of its intent to use 2D1.1(a)(1), a provision that imposes a higher base offense level if the homicide resulted from the use of a narcotic substance. Later, however, the government opted to pursue enhancement under 2K2.1 instead.
 
 [6]
 

 
 *1534
 
 Although Shackleford contends he was not notified of the government’s change in plans, our review of the record indicates otherwise. Evidence relating to both homicides was presented at the sentencing hearing, and the appellant had the opportunity to cross-examine the government’s witness, or introduce evidence of its own. Shackle-ford declined the district court’s invitation to do either. The government’s intent to seek enhancement under section 2K2.1 was also expressed in the (PSR) filed over a month before sentencing. Contrary to his contention, Shackleford registered no objection to the government’s decision, reflected in the PSR, to change its theory of enhancement.
 
 [7]
 
 We find no error in the district court’s application of section 2K2.1.
 

 Drug Quantities
 

 The appellants argue that the district court improperly attributed the total quantity of drugs seized from all co-conspirators to each of them for the purpose of calculating their base offense levels. We dismiss this contention.
 

 In
 
 United States v. Mir,
 
 919 F.2d 940, 943 (5th Cir.1990), our court held that “under the Guidelines, the base offense level can reflect quantities of drugs not specified in the count of conviction if they were part of the same course of conduct or part of a common scheme or plan.” Furthermore, the guidelines impose culpability for the purpose of sentencing for criminal activity “in furtherance of the [conspiracy] ... that was reasonably foreseeable by the defendant.” U.S.S.G. § 1B1.3, Application Note 1. As co-conspirators engaged in a common enterprise, the appellants could have reasonably foreseen that any member of the conspiracy could have been in possession of that quantity of drugs at any time. We find no error in the sentencing court’s calculations.
 

 Harris’ Criminal History Category
 

 Harris contends that the district court improperly considered his pre-indictment drug activities in Marshall in calculating his criminal history category. He challenges the district court’s factual finding that the Hamilton manufacturing activities were undertaken while he was on parole and less than two years after his release from prison. Noting that his parole term ended in October of 1987, and the jury convicted him of conduct commencing in June of 1988, Harris suggests the district court’s factual finding was clearly erroneous.
 

 Harris’ criminal history rating was increased three points under sections 4A1.-1(d) & (e) on the ground that he was on parole when he undertook commission of the “instant offense.” Relying on Application Note 4 to that section, the government argues that “the instant offense” includes any “relevant conduct” as that phrase is used throughout the guidelines. Accordingly, the government suggests that pre-in-dictment activities may properly be considered when determining the applicability of section 4A1.1 (d) or (e). We agree.
 

 A conclusion that uncharged acts that are part of a continuing course of conduct may be considered in applying section 4A1.-1(d) and (e) appears consistent with other provisions in the guidelines.
 
 See e.g.,
 
 § 1B1.3,
 
 Background Commentary
 
 (indicating that “conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guidelines sentencing range”); § 2D1.2,
 
 Application Note 1
 
 (permitting consideration of uncharged acts relating to a conspiracy to determine the scope of that conspiracy); § 2D1.1,
 
 Application Note 12
 
 (allowing the use of drug quantities and types not specified in the
 
 *1535
 
 indictment to calculate the base offense level); § 3B1.1,
 
 Introductory Comments
 
 (noting that the defendant’s role in the offense is to be determined by considering “all relevant conduct,” not just the conduct forming the basis for the conviction).
 

 Although not specifically charged in the indictment, the government produced significant evidence that Harris was involved in methamphetamine production in Marshall in 1987 while he was on parole and less than two years after his release from prison. Those activities were nearly identical to the ones for which he was charged and convicted, and were temporally related as well. Because they were part of a continuing course of conduct, we find no error in the district court’s decision to apply section 4Al.l(d) and (e) in calculating Harris’ criminal history range.
 

 Theoretical Equivalencies
 

 The aDnellants áreme that the district court improperly calculated the quantity of phenly-2-propanol
 
 [8]
 
 seized during the conspiracy. Although not included in the presentence report, the district court concluded at the sentencing hearing that the calculations were correct. The calculations approved by the court reflect an equivalency of 43.44 kilograms of cocaine; those submitted by the appellants reflect an equivalency of 20.99 kilograms. Either calculation places the appellants in offense level 34, which ranges from 15 to 50 kilograms. Even assuming that the district court’s calculations were erroneous, the appellants were not adversely affected. We dismiss this contention.
 

 Minor Participant Status
 

 Townsend argues that the district court should have sentenced him as a minimal or minor participant in the conspiracy. Guideline section 3B1.2 provides a two to four level reduction in the base offense level for those offenders found to be relatively less culpable than others involved in the same scheme or conspiracy.
 
 See United States v. Buenrostro,
 
 868 F.2d 135, 137 (5th Cir.1989). The guidelines define “minimal participant” as one who demonstrates a “lack of knowledge or understanding of the scope and structure of the enterprise.” A “minor participant” is similarly defined as one who is “less culpable than most other participants, but whose role could not be described as minimal.” U.S.S.G. § 3B1.2,
 
 Comment notes 1 & 2.
 
 Furthermore, our court has noted that “it is intended that [the adjustment] will be used infrequently.” We are unpersuaded by Townsend’s suggestion that either classification applies to him.
 

 Although Townsend maintains that he was an unknowing participant in the scheme, the evidence adduced at trial, and the jury’s verdict, belie his argument. Aside from his extensive pre-indictment activities, the evidence indicates that Townsend played a significant role in the Hamilton scheme, providing the lab with needed chemical supplies. We find no error in the district court’s assessment of Townsend’s role in the conspiracy.
 

 Constitutionality of the Sentencing Guidelines
 

 Finally, the appellants raise the tired argument that the sentencing guidelines are unconstitutional since they permit the district court to resolve factual disputes without the benefit of a jury. This very contention has been raised before, and consistently rejected.
 
 See e.g., United States v. Byrd,
 
 898 F.2d 450, 452-52 (5th Cir.1990);
 
 United States v. Casto,
 
 889 F.2d 562, 569-70 (5th Cir.1989),
 
 cert. denied,
 
 — U.S. -, 110 S.Ct. 1164, 107 L.Ed.2d 1067 (1990). Accordingly, we do likewise.
 

 Conclusion
 

 For the foregoing reasons, the judgment of the district court is
 

 AFFIRMED.
 

 [1]
 

 . Because Texas, like most states, requires buyers of certain chemicals to present identification and register their purchases with the seller, fal
 
 *1529
 
 sified identification is typically used to avoid detection.
 

 [2]
 

 . Although the government maintained throughout the trial that all the manufacturing activities were part of one continuing conspiracy, the indictment charged the appellants only with conduct beginning in June of 1988. Thus, the activities at the Marshall laboratory were not covered by the indictment.
 

 [3]
 

 . Five other co-defendants, including Wendell’s brother Eric and his wife Mi Linda, plead guilty before trial. Rebecca Burnette cooperated with the government, and was not indicted.
 

 [4]
 

 . The jury was told that "in determining whether a defendant [is] a member of an alleged conspiracy ... the jury should consider only that evidence pertaining to his acts and statements."
 

 [5]
 

 . Section 841(b)(1)(A) provides a penalty of
 
 “not less than ten years or more than life ”
 
 or, if the offender was previously convicted of a felony drug offense,
 
 “not less than 20 years or more than life "
 
 for an offense involving 100 grams or more of a mixture containing a detectable amount of methamphetamine. Similarly, § 841(b)(1)(B) imposes a penalty of
 
 “not less than five years or more than forty years "
 
 or for a prior convicted drug felon,
 
 “not less than 10 years or more than life
 
 ” for an offense involving the same quantity of drugs.
 

 [6]
 

 . There was evidence introduced at the sentencing hearing that the body of a young woman had been found stuffed in a barrel at the Hamilton lab as well. An apparent victim of strangu
 
 *1534
 
 lation, the body was found with an electric cord wrapped around its neck, and a bag with a syringe nearby. Because the evidence of the appellants’ involvement in that death was inconclusive, however, the government chose not to rely solely on it at sentencing.
 

 [7]
 

 . The record reveals that Shackleford’s objection at the sentencing hearing related to the court’s use of hearsay testimony rather than a jury in resolving disputed factual issues. Our court has consistently sanctioned use of hearsay at sentencing,
 
 United States v. Byrd,
 
 898 F.2d 450, 452-53 (5th Cir.1990), thus rendering that objection meritless.
 

 [8]
 

 . That compound, referred to as "P-2-P,” is an intermediate compound produced in the methamphetamine synthesis process. The guidelines provide equivalency formulas correlating quan-titles of P-2-P to cocaine for the purpose of sentencing. Under § 2D1.1, 1 gram of P-2-P is equivalent to 2.08 grams of cocaine.