**UNITED STATES of America**

v.

**John R. PASCIUTI.**

**Cr. No. CR–91–63–07–S.**

United States District Court,
D. New Hampshire.

June 30, 1992.

continuing criminal enterprise and drug conspiracy. Several firearms violations are also charged. The indictment mentions that defendants, some of which allegedly belong to the Hells Angels Motorcycle Club, influenced other motorcycle groups and together distributed large quantities of methamphetamine, marijuana, tetrahydrocannabinol (THC), and mescaline, Schedule I or II controlled substances, in New Hampshire and other places. The government claims that the drug business generated substantial profits laundered through legitimate businesses and that drugs were supplied as a reward to loyal conspirators and denied to those failing to perform as expected. The indictment mentions the use of threats, intimidation, beatings, and other forms of violence in defense of and to protect the drug business, the thwarting of investigative efforts by law enforcement, the threatening of witnesses and jurors, and the possession of weapons to accomplish the above.

We have before us defendant's motion to suppress, Docket Document No. 350, and the government's objection, Docket Document No. 397. As alleged in defendant's motion, on August 3, 1989, John R. Pasciuti was stopped in Glen, New York, by the New York State Police and was given traffic tickets for violation of New York traffic laws. Specifically, the state trooper issued traffic violations for operating the pickup truck with a cracked windshield and for the operator failing to wear a seat belt. *See* traffic tickets (Simplified Traffic Information) Nos. TJ2381492 and TJ2381481, for the seat belt and broken windshield, respectively, Exhibits 2 and 3 to Docket Document No. 397. The pickup truck belonged to codefendant Charles Pasciuti. After the stop for traffic violations,[1] and after securing John Pasciuti's consent,[2] a search of

David Vicinanzo, Clyde R.W. Garrigan, Asst. U.S. Attys., Jeffrey R. Howard, U.S. Atty., Concord, N.H., for U.S.

Kenneth D. Murphy, Casassa & Ryan, Hampton, N.H., for defendant.

### MEMORANDUM ORDER

FUSTE, District Judge, Sitting by Designation.

This case is a multi-count criminal prosecution against eighteen individuals, for a

---

1. The defendant is not contesting the validity of the two traffic informations. He only argues that those violations were pretextual, since the trooper's state of mind had connected the vehicle with some Hells Angels cyclists that travelled along with defendant Pasciuti.

2. The motion to suppress, Docket Document No. 350, contains an affidavit by Pasciuti, where he affirmatively states having consented to the search of the truck's cab or passenger cabin, the built-in tool boxes on the sides of the truck, some saddle bags in the bed of the truck, and

the pickup truck was conducted. Drugs and guns were found.[3]

Defendant now alleges that the consensual search was illegal because the same was conducted after a pretextual stop; that the search went beyond any consent given, and that the defendant has standing to assert his Fourth Amendment rights.

The court has looked into the matter and now denies the motion to suppress. We also decide that defendant need not be afforded a hearing as requested..

## I.

### The Issue of Standing

The defendant claims that the fact that the vehicle belonged to his brother, Charles Pasciuti, should not operate as a bar to his legal standing to challenge the fruits of the search. In his affidavit, he claims that he operated the vehicle with permission from the owner. Accompanying him on motorcycles for the trip to South Dakota were other individuals, including Charles Pasciuti. He asserts that at the hearing on his motion, he will prove that he exercised dominion and control over the property searched and that the totality of circumstances grants him an expectation of privacy under the facts of the case. *United States v. Sánchez*, 943 F.2d 110, 113 (1st Cir.1991).

We find, however, that this issue must be conceded to defendant without more discussion. Indeed he has standing to bring about a claim of legitimate expectation of privacy over the pickup truck. As a matter of fact, the government proffers that the evidence to be presented at trial is to the effect that the defendant drove the truck not only with the permission of the owner, codefendant Charles Pasciuti, but at his

direction. The government's position is consistent with John Pasciuti's assertion of a legitimate expectation of privacy in the pickup truck the day the search was conducted.[4]

## II.

### The Stop Was Not Pretextual As a Matter of Law

A police officer may stop an automobile in a public highway if there is a reasonable suspicion that the vehicle or the operation of such vehicle by an individual has occurred in violation of law, including traffic laws. *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979); *United States v. Rodríguez-Morales*, 929 F.2d 780, 784 (1st Cir.1991); *United States v. Ogden*, 703 F.2d 629, 633 (1st Cir.1983). Violations as minor as those relating to vehicle equipment (windshield) or seat belts are of the kind that allow police officers to stop automobiles. *United States v. Harris*, 932 F.2d 1529, 1536 (5th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 270, 116 L.Ed.2d 223 (1991).

■ Here, there can be no serious challenge to the fact that the New York State Police had the right to stop Pasciuti's pickup truck and write, as they did, two traffic tickets, one for a broken windshield, the other for failure by the driver to use a seat belt. Pasciuti has not challenged the merit of those two "Simplified Traffic Informations," and it is unimportant if the police officer had a second motive or suspicion (relation of truck to Hells Angels or cyclists) that prompted him to act on the otherwise neutral traffic violations— "[e]ven if the officer had an ulterior motive, the fact that there was an objectively

---

the tool box built into the other side of the pickup truck.

**3.** The search was momentarily interrupted while the trooper went back to his cruiser to verify certain information over the radio. Upon his return a moment later, ·he continued the search of the items in the truck bed. The officer decided to look behind the pickup bed's plastic liner and, in a hollow space between the bed liner and the side wall near the left tail light, three loaded handguns were found. The

occupants of the vehicle were placed under arrest and further search of the area disclosed additional guns, drugs, and other documentary evidence now sought to be suppressed.

**4.** The government, mindful of *United States v. Bouffard*, 917 F.2d 673, 677–78 (1st Cir.1990), is not stipulating defendant's standing. It is simply conceding the point for purposes of the motion to suppress.

reasonable basis for his action validates the stop." *United States v. Harris,* 932 F.2d at 1536.

The law is to the effect that an objective assessment must be made of the police officer's actions in light of the circumstances confronting him. His state of mind or the whole list of mental reasons is of little importance, as long as the record allows one to conclude that objectively, an intervention, such as a vehicle stop, is warranted. In *United States v. Hadfield,* 918 F.2d 987 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2062, 114 L.Ed.2d 466 (1991), the court stated:

> The pretext claim [is] impuissant as a matter of law.... It is a bedrock premise of fourth amendment jurisprudence that an officer's state of mind or subjective intent in conducting a search is inapposite as long as the circumstances, viewed objectively, justify the action taken.

918 F.2d at 993.

■ For purposes of the present determination, we assume that the state trooper saw motorcycles and potential Hells Angels and that he associated them with Pasciuti's pickup truck. This poses no illegality. The pickup truck was then stopped because, in addition, the officer saw the cracked windshield and the driver without a seat belt. Traffic tickets were issued and a consent to search was validly obtained. If the search was done with consent, such search was valid. The fruits of the same should not be suppressed. *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 227–28, 93 S.Ct. 2041, 2045, 2047–48, 36 L.Ed.2d 854 (1973).

## III.

### *Consent and the Search*

■ Defendant Pasciuti's affidavit allows us to conclude that the state trooper asked for permission to search and that he consented to the search of the pickup truck's cab or cabin, the built-in tool boxes on the side of the truck, the tool box built into the other side of the truck, and the saddle bags carried in the pickup truck bed. One familiar with a small size pickup truck will realize that the consent included practically all the area of the vehicle. The cab was searched, and also the side panels of the bed where the tool boxes are built-in on both sides of the truck. *See* photos, Exhibits 1, 4, and 5, Docket Document No. 397.

Pasciuti claims, however, that the search he authorized was exceeded because the trooper looked behind the plastic bed liner in order to find the guns and drugs in a space next to the side wall of the truck's bed, close to the left tail light.[5] The answer to this dispute is found in *Florida v. Jimeno,* —— U.S. ——, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). In *Jimeno,* the Supreme Court states that "[t]he standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno,* —— U.S. at ——, 111 S.Ct. at 1804. As in *Jimeno,* "[t]he question [ ] then, is whether it is reasonable for an officer to consider a suspect's [ ] consent to a search of [the cab of a pickup, its structures or built-in spaces on the side of the truck's bed and what is contained in the truck bed] to include consent to examine a [corner in the bed behind the plastic bed liner]." *Jimeno,* —— U.S. at ——, 111 S.Ct. at 1804. We think that it is.

Following *Jimeno,* "[t]he scope of the search is generally defined by its expressed object." *Jimeno,* —— U.S. at ——, 111 S.Ct. at 1804. Here, Pasciuti, for all practical purposes, allowed the state trooper to look into the truck's cabin and the equivalent to an automobile's trunk, the flatbed sides and the open truck bed itself. He claims no explicit limitation on the areas to be searched. Since the police was obviously interested in contraband or illegal objects, it was objectively reasonable for the

---

**5.** The defendant claims that his consent was given, as he outlines in his affidavit, for the state trooper to look into certain areas of the truck. He denies a general consent. The government claims that a general consent was given. We assume, for the purposes of analysis, that the consent was as described in defendant's affidavit.

state trooper to conclude from the consent given that he could move a corner of the bed lining to complete his search for drugs or guns. It is unrealistic to pretend that a person that consents to the most intimate part of the pickup truck, the cabin and the closed built-in tool boxes on the truck sides, validly preserved an objection to the trooper's search of a corner near one tail light under a superimposed bed liner. Quoting from *Jimeno*, "[a] reasonable person may be expected to know that narcotics are generally carried in some form of a container. 'Contraband goods rarely are strewn across the trunk or floor of a car.'" *Jimeno*, — U.S. at —, 111 S.Ct. at 1804 (quoting from *United States v. Ross*, 456 U.S. 798, 820, 102 S.Ct. 2157, 2170, 72 L.Ed.2d 572 (1982)).

We decide that the authorization to search in this case extended to that area of the pickup truck's flatbed just behind the plastic liner that the truck owner put over the bed to protect the same from scratches.

A suspect may of course delimit as he chooses the scope of the search to which he consents. But if his consent would reasonably be understood to extend to a particular container [the flatbed], the Fourth Amendment provides no grounds for requiring a more explicit authorization. "[T]he community has a real interest in encouraging consent, for the resulting search may yield necessary evidence for the solution and prosecution of crime, evidence that may ensure that a wholly innocent person is not wrongly charged with a criminal offense."

*Jimeno*, — U.S. at —, 111 S.Ct. at 1804 (quoting from *Schneckloth v. Bustamonte*, 412 U.S. at 243, 93 S.Ct. at 2056).

## IV.

*Defendant Is Not Entitled to a Hearing*

■ Defendant has requested, and we will not grant, a hearing on his motion to suppress. Obviously, such hearing would be beneficial to defendant. He would have an opportunity to examine the state trooper and Robin Golden, a protected witness.

But this discovery windfall is only available as a bonus in cases where the district court, upon examining the motion to suppress, finds important issues of fact where the credibility of witnesses is important and the allegations are definite, specific, detailed, and nonconjectural. A hearing is available if the district court finds that defendant's posture, if proved, would inevitably require the granting of relief. *Cohen v. United States*, 378 F.2d 751 (9th Cir.), *cert. denied*, 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967), adopted by the First Circuit in *United States v. Migely*, 596 F.2d 511, 513 (1st Cir.1979). Here, the issue of standing has been conceded to defendant. We recognize his standing to move for suppression. The second issue, the pretextual nature of the stop, has been decided as a matter of law, it being unimportant what the trooper's state of mind was when he stopped the truck for two definite traffic violations. The third issue, that of consent and search, has taken for granted defendant's allegations. As a matter of law, we have decided that *Florida v. Jimeno*, — U.S. —, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991), forecloses the issue. Lastly, a *Franks* hearing, where a defendant challenges the truthfulness of sworn statements in support of a search warrant, *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), as well as a hearing on a warrantless search, are only granted if the defendant makes a sufficient threshold showing of a harmful constitutional violation. Only when the court sees such showing on motion papers is a hearing warranted. *United States v. Panitz*, 907 F.2d 1267, 1273 (1st Cir.1990); *United States v. Hadfield*, 918 F.2d 987, 992 (1st Cir.1990). Pasciuti has failed to make such a showing. Objectively examined, the kind of consent he admits giving to the state troopers to search the pickup truck after he was stopped for traffic infractions is enough to validate the search and the seizure here made without more.

The motion to suppress is now DENIED, without prejudice of evidentiary objections

at trial.[6]

IT IS SO ORDERED.

---

**6.** This result does not exonerate the government of its duty to present enough evidence to justify the state trooper's intervention with Pasciuti as a prerequisite to admission of evidence at trial.