# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 11, 2007**

Charles R. Fulbruge III
Clerk

No. 06-40382

UNITED STATES OF AMERICA

Plaintiff-Appellee

V.

ERNESTO CARREON

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before GARWOOD, JOLLY, and STEWART, Circuit Judges.

PER CURIAM:[*]

Ernesto Carreon appeals his conviction for conspiracy to possess with intent to distribute more than 1000 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846, and possession with intent to distribute more than 1000 kilograms of marijuana, in violation of §§ 841(a)(1), 841(b)(1)(A) and 18 U.S.C. § 2. Finding no error, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

The police investigation that would ultimately lead to Ernesto Carreon's arrest began with an August 2004 conversation between Norberto Lopez and Hector Garcia. Lopez, acting on behalf of co-defendant Jose Lopez-Aparicio, asked Garcia to transport some narcotics in a tractor-trailer from Weslaco to Houston. Garcia provided this information to the Texas Department of Public Safety (DPS) and agreed to become a confidential informant with respect to the drug transportation plan.

After Lopez and Garcia had discussed the details of meeting with Lopez-Aparicio several times, Lopez took Garcia to Lopez's home in Weslaco on August 27, 2004 to meet Lopez-Aparicio. DPS began surveillance of Lopez's home and observed Lopez-Aparicio's arrival. Lopez introduced Lopez-Aparicio to Garcia, and Garcia eventually left with Lopez-Aparicio in Lopez-Aparicio's truck. While driving, Lopez-Aparicio explained the details of the drug transportation plan to Garcia, including the amount Garcia would be paid and that they were going to pick up other persons to accompany them on the trip to Houston. They subsequently arrived at the ranch of Lopez-Aparicio's cousin, the appellant Carreon.

After picking up Carreon, Lopez-Aparicio returned to the highway and, following Carreon's directions, traveled to a Wal-Mart parking lot. Before Carreon had given directions to Lopez-Aparicio, Garcia had not known they were traveling to a Wal-Mart. Carreon and Lopez-Aparicio left Garcia at the parking lot and told him they would be back in 15 minutes with the tractor-trailer. DPS continued their surveillance of Lopez-Aparicio and Carreon when they left the Wal-Mart. DPS observed the two men stop at a residence and speak to men gathered outside before traveling to a second location where the tractor-trailer was parked. Both men inspected the outside of the tractor-trailer, and Lopez-

Aparicio then left driving the tractor-trailer while Carreon followed in Lopez-Aparicio's truck.

Soon after, DPS conducted a traffic stop of the tractor-trailer because of an obscured license plate. During the course of the stop, Lopez-Aparicio offered the DPS officer an unsigned bill of lading, partially computer-generated, partially typewritten, declaring cottonseed as the contents of the tractor-trailer. Lopez-Aparicio eventually consented to a search of the tractor-trailer, in which DPS ultimately found approximately 3,000 kilograms of marijuana hidden among the cottonseed. Lopez-Aparicio was immediately arrested and his cell phone confiscated.

Meanwhile, Carreon had continued past the stopped tractor-trailer, leaning to one side in his vehicle to get a better view of the patrol car. Carreon drove in a large loop, going first back to the Wal-Mart, then to the residence he and Lopez-Aparicio had visited, and finally to the location where the tractor-trailer had been pulled over. Carreon was then pulled over and arrested by DPS. His cell phone and two more found in Lopez-Aparicio's truck were confiscated. Carreon was taken to the local DPS office and questioned there. When asked how much marijuana was in the trailer, Carreon answered "I don't want to say anything. I don't want to get in any more trouble."

Later investigation by DPS showed that the bill of lading produced by Lopez-Aparicio at his arrest was counterfeit. Glynda Johnson, an employee of the cooperative from which the cottonseed was purchased, confirmed that Lopez-Aparicio's bill of lading was doctored and produced the bill of lading with the same ticket number as that of the counterfeit. It showed that the cottonseed had been purchased with cash several days before the arrest, contrary to the counterfeit bill which gave the date of purchase as the date Lopez-Aparicio and Carreon had picked up the tractor-trailer. Johnson was not able to identify Lopez-Aparicio and Carreon as the men who had purchased the cottonseed, but

another employee was ultimately able to identify both defendants as the men who brought the tractor-trailer to the cooperative to be loaded with the cottonseed. Carreon had been the driver at that time.

DPS also conducted an investigation of the phone records for the cell phones taken from Lopez-Aparicio and Carreon, and one of the phones found in Lopez-Aparicio's truck, which had a number matching the number that Garcia had for Norberto Lopez. DPS found that 29 calls had been placed between Carreon and Lopez-Aparicio in a five-day span from August 23 to August 27th. During the same five-day period, 23 calls were placed between Lopez and Lopez-Aparicio, and 15 calls were placed between Garcia and Lopez. The phone records also showed a call on August 25 from Carreon's phone to the cottonseed cooperative, occurring about an hour before the true bill of lading showed the cottonseed to have been picked up.

Further investigation of Carreon's background revealed three prior drug convictions. The first was a 1991 federal conviction for possession with intent to distribute 100 pounds of marijuana. The second was a 1996 state conviction for possession of 79 pounds of marijuana and the last was a 1999 state conviction for possession of 108 pounds of marijuana.

## II.

Lopez-Aparicio and Carreon were charged with possession with intent to distribute more than 1000 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) (2006), 841(b)(1)(A) and 846, and possession with intent to distribute more than 1000 kilograms of marijuana, in violation of §§ 841(a)(1), 841(b)(1)(A) and 18 U.S.C. § 2 (2006). Their first trial by jury ended in mistrial. At the close of the government's evidence in a second trial, Carreon filed a motion for judgment of acquittal, alleging that the government had failed to carry its burden of proof. The district court denied this motion. Both defendants were found guilty of the two counts charged against them. The district court

sentenced Carreon to 360 months of imprisonment on each count, to be served concurrently and to be followed by 10 years of supervised release, and the court imposed a special assessment of $200. Carreon filed a timely appeal.

III.

Carreon raises three issues on appeal. Carreon first claims that the district court abused its discretion in denying the motion for judgment of acquittal. Carreon asserts that the direct and circumstantial evidence offered by the government merely showed that Carreon had an association with the other involved parties, and was not sufficient to support his conviction. Second, Carreon contends that the district court erred in admitting evidence of his prior marijuana convictions. Carreon also argues that the district court abused its discretion in admitting Lopez-Aparicio's statements against Carreon before establishing a conspiracy between the involved parties. We address each of these arguments in turn.

IV.

A.

The proper standard of review for evaluating the sufficiency of the evidence is disputed by the parties. Carreon contends that his sufficiency challenge is properly preserved. Where such a challenge is preserved, the reviewing court determines "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). On the other hand, if the challenge to the sufficiency of the evidence is not preserved, a stricter standard is used, that is, our review is limited to determining whether there was a "manifest miscarriage of justice," which "would exist only if the record is devoid of evidence pointing to guilt, or ... because the evidence on a key element of the offense was so tenuous that a conviction would be shocking." United States v.

Galvan, 949 F.2d 777, 783 (5th Cir. 1991) (internal quotation marks and citations omitted). The government argues that Carreon's failure to make the same motion for the second count with which he was charged, coupled with his failure to renew his motions as to either count, subject him to the miscarriage of justice standard of review. Because the evidence is sufficient to meet both standards, we need not resolve this dispute.

1.

In order to prove conspiracy to possess with intent to distribute narcotics, "the government must prove beyond a reasonable doubt that: (1) an agreement existed to violate the applicable narcotics laws; (2) each defendant knew of the conspiracy and intended to join it; and (3) the defendant participated voluntarily in the conspiracy. United States v. Infante, 404 F.3d 376, 385 (5th Cir. 2005) (citing United States v. Medina, 161 F.3d 867, 872 (5th Cir. 1998)). These elements may be shown by circumstantial evidence, United States v. Gonzalez, 121 F.3d 928, 935 (5th Cir. 1997), but that evidence must show more than the defendant's presence in "a climate of activity that reeks of something foul." United States v. Mendoza, 226 F.3d 340, 343 (5th Cir. 2000) (internal quotation marks and citations omitted).

Possession with intent to distribute narcotics requires that the government prove beyond a reasonable doubt "(1) knowing (2) possession (3) with intent to distribute." United States v. Anchondo-Sandoval, 910 F.2d 1234, 1236 (5th Cir. 1990) (citing United States v. Martinez-Mercado, 888 F.2d 1484, 1491 (5th Cir. 1989)). "Proof of possession will usually depend on inference and circumstantial evidence. When evidence is sufficient to establish the defendant's participation in a conspiracy to possess narcotics, the defendant will be deemed to possess the drugs through the co-conspirator's possession." United States v. Gonzalez, 79 F.3d 413, 423 (5th Cir. 1996) (internal citations omitted).

Carreon's argument regarding the sufficiency of the evidence is, in essence, that he only happened to be in the wrong place at the wrong time. On his account of the circumstances, Carreon's participation in the events of the day on which he was arrested would not evince any broad agreement, but only narrow involvement in a limited set of activities that do not establish his guilt. Such an account is not consistent with the evidence, however.

The government presented evidence that, while Lopez-Aparicio and Garcia were traveling together, Lopez-Aparicio told Garcia that he was going to pick up other people who would accompany them on the trip to transport the marijuana. Lopez-Aparicio then picked up Carreon. What's more, Carreon appeared to have prior knowledge of their intended destination, since he directed Lopez-Aparicio to the Wal-Mart without discussion of that destination.

Once at the Wal-Mart, Carreon and Lopez-Aparicio departed together to get the tractor-trailer. The government's evidence shows that Carreon had been an active participant in the purchase and loading of the cottonseed later used to hide the marijuana. After Lopez-Aparicio was pulled over in the tractor-trailer, Carreon demonstrated visible interest in the traffic stop. He then made a large loop and returned to the site where Lopez had been stopped. After his arrest, Carreon refused to answer questions about the quantity of marijuana in the truck and said that he did not want to get into any more trouble. Furthermore, phone records show that Carreon and Lopez-Aparicio had spoken frequently during the same time period in which the delivery was being organized. And finally, Carreon's three prior convictions for possession of significant quantities of marijuana are strong evidence that he had the requisite intent for the crimes charged against him.

When viewed as a whole, the evidence offered by the government is sufficient to support the jury's verdict, and would allow a reasonable trier of fact to conclude that Carreon was guilty of the charges against him.

2.

As noted above, the intent elements of the two crimes with which Carreon was charged were addressed at trial through introduction of Carreon's prior drug convictions. District court decisions to admit evidence of prior convictions under Fed. R. Evid. 404(b) in a criminal case are reviewed under a heightened abuse of discretion standard. United States v. Mitchell, 484 F.3d 762, 774 (5th Cir. 2007) (internal citations omitted).

Under Fed. R. Evid. 404(b), prior convictions introduced to prove knowledge or intent are admissible as long as the probative value of the prior convictions exceeds their prejudicial effect. See United States v. Harris, 932 F.2d 1529, 1534 (5th Cir. 1991) (citing United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978) (en banc)). Prior convictions will be considered more probative of intent where little independent evidence exists to otherwise establish intent. See Beechum, 582 F.2d at 914. Where intent is well-established by independent evidence, prior convictions offered to show intent are considered essentially cumulative evidence and their probative value is diminished accordingly. See id. Risk of prejudice may also be reduced by limiting instructions. See Mitchell, 484 F.3d at 774 (noting that a limiting instruction can sufficiently minimize the risk of unfair prejudice).

While the government's evidence regarding Carreon's activities is sufficient to establish Carreon's participation, that evidence may not be fully persuasive to a reasonable juror of Carreon's intent. Carreon's defense, as expounded by his attorney, was that he was an innocent participant in the events surrounding his arrest and that no direct evidence existed to connect him with the intent necessary for the charged crimes. A reasonable juror might therefore conclude that Carreon's involvement was minimal in the sense that he only facilitated the transaction without personal interest in the outcome. Because Carreon was advancing his lack of active involvement, the probative

value of Carreon's prior convictions—all relating to possession of large amounts of marijuana—is very weighty, certainly when contrasted with any potential unfair prejudicial effect. Further, the district court issued two limiting instructions to the jury, thereby ameliorating any potentially prejudicial effect of the prior drug convictions. The prior drug convictions were therefore properly introduced and were sufficiently probative to allow a reasonable trier of fact to conclude that Carreon was no innocent acquaintance but instead was knowingly involved with the tractor-trailer containing marijuana.

## B.

Finally, Carreon contends that the district court erroneously admitted hearsay statements of alleged co-conspirators without first establishing the existence of the conspiracy. Admission of a co-conspirator's statement by a district court is reviewed for abuse of discretion. Statements made by co-conspirators are excluded from the general definition of hearsay under Fed. R. Evid. 801(d)(2)(E). In order to qualify for this exclusion, "[t]here must be evidence that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made during the course and in furtherance of the conspiracy." Bourjaily v. United States, 483 U.S. 171, 175 (1987) (internal quotation marks omitted). This Court has held that, although it is preferable that the conspiracy be established and the defendant connected to it prior to the district court admitting declarations from co-conspirators, a district court may nevertheless carry the defendant's objection "through trial or at least through presentation of the government's case until a determination of the existence of Fed. R. Evid. 801(d)(2)(E) predicate facts may be appropriately made." United States v. Fragaso, 978 F.2d 896, 900 (5th Cir. 1992). This decision is "committed to the broad discretion of the trial court." Id.

Here, Garcia was the primary witness testifying to the events leading to the arrest of Lopez-Aparicio and Carreon. Because of the chronology of these

events, Garcia's testimony regarding statements made to him by Lopez-Aparicio was needed early in the case to give context to the other facts of the case. The close connection between Garcia's particular role in the drug transportation plan and the statements made by Lopez-Aparicio as a co-conspirator amply supports the district court's decision to admit the testimony. The district court therefore did not abuse its discretion.

## V.

For the foregoing reasons, Carreon's conviction is

AFFIRMED.