U.S.A., Plaintiff,

v.

**$175,260, Defendant.**

**No. 86 CV 1959 (TCP).**

United States District Court,
E.D. New York.

July 16, 1990.

Andrew J. Maloney, U.S. Atty. by Pamela R. Perron, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y., for plaintiff.

Gino Josh Singer, New York City, for claimant.

## AMENDED MEMORANDUM AND ORDER

PLATT, Chief Judge.

This forfeiture proceeding stems from the DEA seizure of $175,000 in U.S. currency from claimant Steven J. Cohen while he was travelling in John F. Kennedy Airport on December 1, 1985. A non-jury trial was held before this Court on the issue of whether the Government has satisfied the probable cause requirement and may obtain the forfeiture of the defendant-in-rem $175,260, pursuant to Title 21 U.S.C. section 881(a)(6). We hold that it may.

## FINDINGS OF FACT

On December 1, 1985 at John F. Kennedy Airport, the claimant purchased, for cash, a one-way ticket to Lubbock, Texas on American Airlines under the assumed name of Jay Harris. (Pre–Trial Order, Stipulated Fact 1, r. 18)

Claimant carried with him a single carry-on bag and a shopping bag. (PTO, Stip. 2, r. 13) Each bag contained a gift-wrapped box of U.S. currency which together totalled $175,000. (r. 14) He had no checked luggage. (r. 14, 118)

When claimant's luggage pased through the pre-flight screening monitor, a large quantity of U.S. currency was discovered. (r. 12) Port Authority police notified the United States Drug Enforcement Administration. (r. 10) DEA Special Agents Mark Thornton and Peter Mittesser introduced themselves to the claimant and said that they were interested in clarifying the status of the money. (r. 13, 14) Claimant was detained from his flight and Thornton questioned him. (r. 101)

During the interview, claimant told the agents that he was going to Texas to meet a brother-in-law named Jay in Texas to invest in a business venture. (r. 14, 15) However, he did not know Jay's last name, his address, or what kind of business Jay had. (r. 14, 15) At trial, claimant stated that he took the money intending to leave his family. (r. 118) However, he did not call ahead to make any hotel reservation, he did not let anyone know he was coming, he does not have any friends in Lubbock, Texas, and all he took were clothes for a few nights. (r. 145) In addition, six months earlier he had bought a new house with his wife. (r. 145)

Claimant added that his wife was aware of the trip and the money. (r. 16) A telephone call to claimant's wife revealed that she was aware of her husband's departure, but she was unaware of the money. (r. 16) Claimant then told the DEA agents that his wife did not know about the currency because he had kept it hidden in a Pampers disposable diaper box in their home. (r. 17) Claimant further stated that he kept the money hidden because he did not trust banks, and he did not want the money to be known. (r. 17, 128, 130) At trial, however, he admitted he had an account at the Crossland Savings Bank and a mortgage on his home with the Dime Savings Bank. (r. 133)

Claimant's travel bag was placed on a baggage carousel and subjected to canine detection. (r. 21) After bypassing at least ten pieces of luggage, a U.S. Customs Service detector dog gave a strong positive alert indicating the presence of narcotics residue by biting claimant's bag. (r. 21) Detective Thornton had worked with this particular dog on several prior occasions, and the dog had never given an inaccurate alert. (r. 23, 24) The agents advised claimant that DEA was seizing the currency pursuant the 21 U.S.C. § 881(a)(6) and gave him a receipt. (r. 25) They counted the money and found that most of it was in five, ten and twenty-dollar denominations. (r. 27, 28) The actual total was $175,000, consisting of more than seven thousand bills. (r. 29)

Claimant then told the DEA agents the first of several stories of how he acquired the currency. He first claimed the money represented the collection of debts repaid by various borrowers. (r. 17, 106) At least $100,000 of this had come from under-the table payments he had received as a restaurant consultant. (r. 18) However, claimant refused to name any of his debtors or restaurant clients stating he didn't want to implicate them. (r. 18, 19)

On March 4, 1986, claimant submitted a Petition for Remission in which he swore that the currency constituted savings accumulated over many years. (r. 147) However, at trial, claimant admitted he had lied to the DEA agents. (r. 124, 147) Instead, he testified that his homosexual lover had given claimant the currency in March 1983. (r. 124, 126) Supposedly, claimant never asked how his lover, a chemical engineer employed by the City of New York, got this large amount of money. (r. 115, 126) Nor did he ever count the money or receive any form of a receipt. (r. 127). The lover supposedly gave claimant this unusual gift because he "just wanted (claimant) to be

happy." (r. 115) This allegedly occurred toward the end of their three-month relationship, and subsequently the lover died of cancer and/or AIDS. (r. 114)

Prior to 1980, claimant worked as a cab driver, as an employee with Ultrasonic Instruments, and as a restaurant manager. (r. 122) Claimant did not work full-time from 1980 to 1984. (r. 111) After the DEA seizure, claimant testified to declaring the money on his income tax return for the year 1985, as income from self-employment and personal services. (r. 139) Claimant did not declare the money by filing a donee gift tax return. (r. 136) However, the IRS has no record for federal tax returns filed by claimant for the tax year 1985. (r. 167, 168) Similarly, there are no records of his filing federal tax returns for the years 1975 through 1986. (r. 167, 168)

## DISCUSSION

In a civil forfeiture action, the government bears the burden of demonstrating the existence of probable cause for a belief that a substantial connection exists between the property to be forfeited and proceeds from a drug transaction in violation of 21 U.S.C. § 881.[1] *United States v. Four Million Two Hundred Fifty–Five Thousand,* 762 F.2d 895, 903 (11th Cir. 1985). The government does not need to charge the individual with a specific drug violation. *U.S. v. $29,500,* 677 F.Supp. 1181 (N.D.Ga.1988). Nor does the government need to specify to which particular drug transaction the propery was connected. *United States v. Four Million Two Hundred Fifty–Five Thousand,* 762 F.2d at 904. The government need only supply evidence that provides reasonable grounds for connecting the property in question to illegal narcotic activity. *U.S. v. Porsche 911–S,* 682 F.2d 283 (1st Cir.1982).

"Probable cause" in a forfeiture action means reasonable grounds for belief (that the property in question is connected to illegal narcotic activity), supported by more than mere suspicion, but less than *prima facie* proof. *United States v. One 1978 Chevrolet Impala,* 614 F.2d 983, 984 (5th Cir.1980) (*Per Curiam*). Moreover, circumstantial evidence and inferences therefrom can suffice to support a finding of probable cause. *United States v. Four Million Two Hundred Fifty–Five Thousand,* 762 F.2d at 904. Probable cause need not be shown by one fact in particular, but rather, the aggregate of facts may satisfy the probable cause requirement. *U.S. v. $31,828,* 760 F.2d 228 (8th Cir.1985). See also *U.S. v. Porsche, supra* citing *U.S. v. One 1975 Pontiac Lemans,* 621 F.2d 444, 449 (1st Cir.1980) (where the court held that the existence of probable cause is to be evaluated on the basis of the collective information of the law enforcement officers engaged in a particular investigation.) Courts have emphasized that probable cause must be judged with a common sense view of the realities of normal life. *United States v. Four Million Two Hundred Fifty–Five Thousand,* 762 F.2d at 904.

Here, the aggregate of the facts satisfies the probable cause standard. First, claimant was carrying $175,000, which is substantially greater than the average law-abiding tax payer carries while travelling in an airport. *See U.S. v. $4,000,* 613 F.Supp. 349 (S.D.N.Y.1985) (where the court held that carrying large amounts of currency support an inference that it was collected as proceeds from a narcotic sale). Other pertinent circumstances are that there was no receipt for the cash, and claimant never filed any federal taxes for the money, as either income or as a gift. Claimant also deliberately gift-wrapped the seven thousand bills in carry-on bags dur-

---

1. 21 U.S.C. § 881 provides in pertinent part:

   (a) **Subject Property**

   The following shall be subject to forfeiture to the United States and no property right shall exist in them:

   \* \* \* \* \* \*

   (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation this subchapter. . . .

ing the Christmas season, presumably in an effort to hide the money. In addition, claimant travelled under a false name and gave misleading information to the DEA agents. The aggregate of these facts certainly satisfies the probable cause requirement linking the defendant-in-rem to either purchase money or proceeds of narcotics trafficking.

■ Moreover, even if the aggregate of facts fell short of satisfying the probable cause requirement, the canine identification of claimant's luggage alone is sufficient to establish probable cause. *See U.S. v. $33,-200,* 1989 WL 42504 (E.D.N.Y.1989) citing *U.S. v. Johnson,* 660 F.2d 21, 22 (2d Cir. 1981) (where the court held that narcotic canine identification is a sufficient and objective way to establish probable cause of the existence of drugs.) *See also U.S. v. Waltzer,* 682 F.2d 370, 373 (2d Cir.1982) (where the court held that probable cause has been established as to the person possessing the luggage where designation by a dog with a record of accuracy occurs.) Here, Zoom, the U.S. Customs trained dog[2], singled out claimant's property by biting his luggage. This strong reaction indicated narcotic residue on the property, and thus established probable cause.

■ In response, claimant raised the innocent owner defense. This defense, as set forth in the forfeiture statute 21 U.S.C. § 881(a)(6), provides in pertinent part, "no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have committed or omitted without the knowledge or consent of that owner." However, it is claimant's responsibility to prove an absence of actual knowledge that the money had any connection to illegal narcotic tranactions. *United States v. Four Million Two Hundred Fifty–Five Thousand,* 762 F.2d at 907. That is, once the government satisfies the requirement of showing proba-

ble cause, the burden shifts to the claimant to rebut the government's evidence. *United States v. Four Million Two Hundred Fifty–Five Thousand,* 762 F.2d at 904. To rebut the government's evidence, the claimant must demonstrate by a preponderance of the evidence that the money seized was not derived from or intended to be used to faciliatate a narcotics transaction. *United States v. Four Million Two Hundred Fifty–Five Thousand,* 762 F.2d at 904; *U.S. v. U.S. Currency Totalling $29,500.00,* 677 F.Supp. 1181 (N.D.Ga.1988). Moreover, "speculation must leave the burdened party the loser." *U.S. v. Fleming,* 677 F.2d 602, 610 (7th Cir.1982).

Here, claimant failed to establish that the money was not connected to illegal drug transactions. The numerous conflicting stories he provided are incredible. His final story of acquiring the money from a former lover who has since died of AIDS is unsubstantiated and unpersuasive.[3] Claimant has repeatedly lied, both under oath and to the DEA agents. Moreover, the fact that he did not declare the money to the federal government and only declared the money as other income to the State government, poses substantial questions for claimant which he did not satisfactorily answer.[4]

In conclusion, the canine identification coupled with the totality of the circumstances conclusively satisfies the government's requirement of demonstrating probable cause connecting the defendant-in-rem to illegal narcotic transactions, and claimant did not establish by a preponderance of the evidence that the money was not associated with illegal narcotic activity. Thus, the Government's forfeiture application must be and hereby is granted.

SO ORDERED.

---

2. DEA agent Mark Thornton testified to the reliability and accuracy of the dog, Zoom.

3. This court also finds it inconceivable that claimant's wife could fail to notice seven thousand bills within a pamper's box in the course

of diapering a baby every day for two and a half years (March 1983 to December 1, 1985).

4. Claimant may not blame his accountant, who has since died, for falsely representing the money as other income on his tax returns.