UNITED STATES of America,

v.

Felix Antonio PUELLO, et al., Defendants

and

All Accounts, Funds, Safe Deposit Boxes and Other Things of Value Held in the Name of or for the Benefit of Puello Meats and Provision, Inc., et al., Defendants-in-rem.

No. CV 92–5040(DRH).

United States District Court, E.D. New York.

March 1, 1993.

Mary Jo White, U.S. Atty., E.D.N.Y., Brooklyn, NY by Gary Brown, Asst. U.S. Atty., for the Government.

Tenzer, Greenblatt, Fallon & Kaplan, New York City, for defendants and defendants-in-rem.

## MEMORANDUM AND ORDER

HURLEY, District Judge

In the above-referenced civil forfeiture action pursuant to 18 U.S.C. § 981, the government seeks a warrant authorizing it to seize the defendant real property and vehicles.[1] The government claims there is probable cause to believe these items were used in violation of 18 U.S.C. §§ 1956 and 1957. Defendant and defendants-in-rem have cross-moved for, *inter alia*, an order pursuant to Fed.R.Civ.P. 26(c) staying this action pending the disposition of a related criminal proceeding. The Court grants the government's motion for the reasons stated below. Defendant's cross-motion is granted to the extent that the final forfeiture proceeding will not be held until the disposition of the criminal case, as explained below. The remainder of defendant's cross-motions are denied.

## BACKGROUND

The complaint in the above-referenced action alleges that Felix Puello devised and executed a scheme to acquire, exchange and redeem illegally acquired food stamps. Amended Complaint ¶ 19. More specifically, the complaint makes the following allegations with respect to how Mr. Puello accomplished these illegal redemptions: Puello Meats, an unauthorized wholesaler owned and/or controlled by Felix and his wife, Carmen Puello, was at one time authorized to accept food stamps, but its authorization was revoked in or around May of 1982, *id.* ¶¶ 20–22, pursuant to 7 C.F.R. § 278.1(c)(6).[2] In spite of this, Puello Meats has been accepting substantial quantities of food stamps in exchange for its wholesale transactions since April of 1990. *Id.* ¶ 23. In fact, between 95% and 100% of Puello Meats' customers pay for wholesale purchases with food stamps. *Id.* ¶ 24.

According to the complaint, Pueblo Market, also owned by Felix Puello, is a purported retail business which was authorized to accept food stamps in or around April of 1990. *Id.* ¶ 22. Felix Puello allegedly used Pueblo Market to redeem the food stamps collected by Puello Meats. *Id.* ¶ 26. Food stamps illegally acquired by Puello Meats and amounting to approximately $40 million have been deposited by Felix Puello and others into one or more bank accounts in the name of Pueblo Market. *Id.* ¶ 28. With each deposit of food stamps into the account of Pueblo Market (approximately 509), Felix Puello filed a redemption certificate certifying that "the food coupons redeemed were accepted in accordance with Food Stamp Program Regulations." *Id.* ¶ 30. In addition to those food stamps redeemed through the Pueblo Market account, a quantity of food stamps illegally accepted by Puello Meats was discounted for cash by Felix Puello. *Id.* ¶ 37.

The government also alleges that the defendant properties have been used by Felix Puello and others to facilitate the above-described scheme, and that the defendant vehicles were used to "store, carry deliver and transport items sold or exchanged for food stamps by Puello Meats and large quantities of food stamps generated by the wholesale operations of Puello Meats." *Id.* ¶ 41.

On November 9, 1992, the Court issued an order to defendants in this action to appear before the Court and show cause why a seizure warrant should not issue and why the United States Marshal for the Eastern District of New York should not execute the warrant, thereby seizing the defendant property and detaining the property during the pendency of this action. On December 10, 1992, all parties appeared before the Court on this case. The above allegations were largely undisputed by defendant, either in papers or on the record during defendant's

---

1. Although the Amended Complaint in this action also seeks the forfeiture of all defendant accounts and funds, these accounts and funds have been frozen pursuant to an order by the Clerk of the Court. Accordingly, the government does not ask that these items be seized, and the Court need not address them at this juncture.

2. In an effort to prevent trafficking in food stamps, the Food and Nutrition Service, a subdivision of the United States Department of Agriculture, has effectively eliminated the participation of strictly wholesale food concerns from the food stamp program. *See* 7 C.F.R. § 278.1.

appearance.[3]

After the December 10 proceeding, the only material fact that was in issue was whether the illegal operation described above has continued beyond defendant's arrest. Accordingly, the Court ordered and conducted a hearing on this sole issue on December 23, 1992. At the close of this hearing, the Court directed the parties to submit post-hearing briefs on whether the evidence established continuing criminal activity.[4] The Court is currently in receipt of those submissions, as well as defendant's supplemental submission containing additional cross-motions.

## DISCUSSION

### I.

#### A. Statutory Framework

Section 981 of Title 18 provides, in pertinent part, that "any property, real or personal, involved in a transaction or attempted transaction in violation of . . . section 1956 or 1957 of this title, or any property traceable to such property", is subject to forfeiture to the United States. 18 U.S.C. § 981(a)(1)(A).

Section 1956 provides for criminal penalties for an individual who, "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involved the proceeds of specified unlawful activity—with the intent to promote the carrying on of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(A)(i). Section 1957 provides for criminal punishment for an individual who "knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity." 18 U.S.C. § 1957(a). Both sections 1956 and 1957 provide that a number of Title 18 crimes constitute "specified unlawful activity", including violations of section 641 (theft of public money, property or records), 1341 (mail fraud) and 1343 (wire fraud). See 18 U.S.C. § 1956(c)(7)(D) and § 1957(f)(3).

#### B. Probable Cause

In a civil forfeiture action, the government bears the burden of demonstrating the existence of probable cause that a substantial connection exists between the property to be forfeited and the illegal activity. See United States v. Four Million Two Hundred Fifty–Five Thousand, 762 F.2d 895, 903 (11th Cir.1985); United States v. $175,260, 741 F.Supp. 45, 47 Civ. No. 86–1959, (E.D.N.Y.1990). Probable cause is demonstrated when there are reasonable grounds for the belief that the property in question is connected to illegal activity, and the reasonable grounds are "supported by more than mere suspicion, but less than prima facie proof." $175,260, at 47 (citing United States v. One 1978 Chevrolet Impala, 614 F.2d 983, 984 (5th Cir.1980) (per curiam)). In addition, "circumstantial evidence and inferences therefrom can suffice to support a finding of probable cause", as can hearsay evidence, as long as the evidence is "judged with a common sense view of the realities of normal life". $175,260, at 47 (citing United States v. Four Million Two Hundred Fifty–Five Thousand, 762 F.2d at 904).

---

3. Although defendant denies the transfer of assets alleged by the government, the Court need not resolve this dispute to determine the propriety of the government's application; as explained below, the government relies upon "continuing fraud" in support of its position. Record of December 10, 1992 proceedings at 19.

4. One issue that arose at the hearing was the admissibility of statements made by Mr. Puello to agents. At the hearing, Mr. Puello argued that his Fifth Amendment rights were implicated when the agents took those statements without advising him of his Miranda rights. The Court asked defendant to brief the issue of the applicability of the Fifth Amendment to civil forfeiture proceedings. While Miranda may be implicated in forfeiture cases, in light of their quasi-criminal nature, see United States v. Coin & Currency, 401 U.S. 715, 721–22, 91 S.Ct. 1041, 1044–45, 28 L.Ed.2d 434 (1971); see also Romanelli v. Comm'r of Internal Revenue, 466 F.2d 872, 878 (7th Cir.1972), defendant has declined to pursue this issue and has withdrawn it from the Court's consideration, apparently on the ground that there was insufficient evidence tending to show that defendant was in custody at the time he made the statements.

In this case, the government's evidence consists of the declarations of Supervisory Special Agent John Yasek, his affidavits in support of the search warrant executed on or about March 30, 1992, and the testimony adduced at the hearing conducted on December 23, 1992. The Court finds that this evidence represents probable cause that the defendant real properties, located at 163 Remsen Avenue, Brooklyn, New York, and 175–185 Remsen Avenue, are the principal places of business for Puello Meats and Pueblo Market and/or were used to facilitate the scheme described above. Additionally, the Court finds probable cause that the defendant vehicles facilitated the scheme insofar as they were used to transport wholesale quantities of food to be sold for food stamps, as well as the large quantities of food stamps received in return for these sales.

Defendant has not offered any evidence to counter the government's showing. In fact, defendant has not denied that he accepted food stamps in exchange for wholesale quantities of food, that employees of Puello Meats sold wholesale quantities of food to undercover government agents, and that these food stamps were fraudulently redeemed through a shell entity called Pueblo Meat Market. Moreover, defendant does not dispute that the defendant buildings house his business operation nor that the defendant trucks are used in connection with that business. Accordingly, the Court finds that there is probable cause that the defendant property in this action has been used illegally.

### (i) *The Specificity of the Complaint*

Although, as stated, defendant does not take issue with the government's contention that he was engaged in illegal activity, he does argue that because the government did not state the circumstances from which the claim arose with "particularity", the government has failed to comply with the mandate of Rule E(2)(a) of the Supplementary Rules. Moreover, he maintains that the government has failed to establish the required nexus between the alleged illegal activity and each specific item of property it seeks to seize. Accordingly, he submits that even if, *arguendo*, some aspects of his business are

related to illegal activity, the government cannot seize his entire business.

Rule E(2)(a) prescribes that the complaint in a forfeiture action "shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Thus, a defendant must be "adequately apprised of the factual circumstances underlying the forfeiture action." *United States v. 4492 Livonia Road,* 889 F.2d 1258, 1266 (2d Cir.1989).

In this case, the Amended Complaint alleges, *inter alia,* that the defendant real property, which includes the principal places of business of Pueblo Market and Puello Meat, were used to facilitate the illegal scheme, and that the defendant vehicles were used to deliver and transport quantities of food and food stamps in furtherance of the scheme. Amended Complaint ¶¶ 38–41. In the Court's view, these allegations, combined with specific allegations regarding the nature of the illegal activity, are sufficient to enable defendant to "commence an investigation of the facts and to frame a responsive pleading", and are therefore consistent with Rule E(2)(a).

Moreover, the Court finds that the government has, through its various submissions to the Court, demonstrated probable cause as to each of the defendant properties being used in connection with criminal activity: the property located at 175–183 Remsen Avenue was used to store food products exchanged for food stamps and also housed the phony retail operation called Pueblo Market, Yasek Supplemental Declaration, ¶¶ 5, 6; and the property located at 163 Remsen Avenue was used as a food storage warehouse for Puello Meats. *Id.* ¶ 7. As discussed at the hearing before the Court on December 10, 1992, all of the trucks at issue are used for business purposes, and the Court finds that in light of the volume of food alleged to have been moved by these vehicles, there is probable cause to believe that each of the eight vehicles was used in connection with criminal activity. Transcript of Civil Order to Show Cause at 22. Because the Court has

determined that there is probable cause to believe that each of the defendant properties was connected to criminal activity, the Court need not reach the question of whether section 981 authorizes the forfeiture of an entire business, even if some aspects of the business were not connected to the illegal activity. *See United States v. Certain Funds on Deposit,* 769 F.Supp. 80, 84 (E.D.N.Y.1991).

Having found that the seizure complies with the relevant statutory provisions, the Court turns to whether issuing the seizure warrant pre-trial violates defendant's due process rights. *See United States v. 8215 Reese Road, Harvard, Illinois,* 803 F.Supp. 175 (N.D.Ill.1992) ("a seizure whose process complies with section 881(b) and Supplemental Rule C(3) may still violate a party's due process rights.").

## II.

### A. Second Circuit Standard

■ In general, due process requires that a person receive a hearing before being deprived of liberty or property. *Zinermon v. Burch,* 494 U.S. 113, 127, 110 S.Ct. 975, 984, 108 L.Ed.2d 100 (1990). However, in certain circumstances, a pre-seizure hearing is unnecessary to satisfy due process. *See Fuentes v. Shevin,* 407 U.S. 67, 92, 92 S.Ct. 1983, 2000, 32 L.Ed.2d 556 (1972). In cases involving the government's "powerful forfeiture arsenal", the Second Circuit has applied the balancing test articulated in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) to determine whether a pre-hearing seizure violates due process. *See United States v. Premises and Real Property at 4492 South Livonia Road,* 889 F.2d 1258, 1264 (2d Cir.1989). The Second Circuit has recently further elucidated the due process requirements for such pre-hearing seizures in *United States v. All Assets of Statewide Auto Parts,* 971 F.2d 896 (2d Cir. 1992).

In *United States v. All Assets of Statewide Auto Parts, Inc.,* 971 F.2d 896 (2d Cir.1992), the Court noted that whereas in criminal prosecutions, the defendant has the protection of the reasonable doubt standard and double jeopardy, in forfeiture actions, the property owner has the burden of proof, and hearsay is admissible to prove the "guilt" of the property. *Id.* at 903–04. Moreover, if a criminal action is tried first, a defendant's acquittal has no collateral estoppel effect on the forfeiture action; in contrast, the government may utilize a forfeiture proceeding "and all of its concomitant procedural advantages[,] to gather evidence and 'test' the case". *Id.* at 904. The Court expressed concern that the relative procedural ease of forfeiture actions would lead the government to use them "as a substitute—or perhaps as a dry run—for ... criminal prosecution[s]". *Id.* at 903. Accordingly, *Statewide* sets forth strict requirements for a pre-hearing, pre-notice seizure, and urges district courts to exercise restraint in this area. *See id.*

In this case, unlike *Statewide,* the government put defendant on notice and defendant was provided with an opportunity to be heard. However, *Statewide,* and its use of the balancing test enunciated in *Mathews,* is still instructive to this Court because the government asks the Court to issue a seizure warrant prior to a full-blown "adjudication of the underlying questions." *See Joseph Health and Beauty Supply,* 807 F.Supp. 320, 322 (S.D.N.Y.1992). Indeed, because *Statewide* was "motivated by the draconian 'finality' of harm that can result from seizure orders", it can be said to apply similarly to applications for seizure warrants made on notice. *See Joseph Health and Beauty Supply,* 807 F.Supp. 320, 322 (seizure orders addressed in *Statewide* are only "sometimes obtained *ex parte* "). Moreover, the Court is mindful of the concern the Court of Appeals expressed in *Statewide* regarding the potential for abuse represented by federal forfeiture. Thus, although the fact that defendant was provided with some process militates in the government's favor, it is not the end of the due process inquiry.

In *Mathews,* the Supreme Court instructed courts in pre-hearing forfeiture actions to balance (a) the private interest involved; (b) the risk of an erroneous deprivation of that interest through the procedures utilized, as well as the probable value of additional safeguards; and (c) the government's interest, including the burden that additional proce-

dural requirements would impose. *See Statewide*, 971 F.2d at 901 (citing *United States v. 141st Street Corp.*, 911 F.2d 870, 874 (2d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991) and *Livonia*, 889 F.2d at 1264–65). The Court will undertake this analysis.

#### (i) *Private Interest*

■ In this case, the private interest at stake is a business. While a commercial property interest has " 'traditionally not occupied the same privileged place as the home' in the eyes of the law", *Statewide*, 971 F.2d at 901 (quoting *141st Street Corp.*, 911 F.2d at 875), the Second Circuit has held that where the extent of the property invasion is significant, as where the government effectively seeks to shut down an entire business, the magnitude of the private interest increases accordingly. *Statewide*, 971 F.2d at 901. Because the government seeks a seizure of all of the property involved in the transaction of defendant's business, and does not seek "to preserve the *status quo ante* seizure," or preserve any aspect of defendant's property rights, *id.* at 902, defendant's interest in the defendant property is substantial.

#### (ii) *Risk of Error and Value of Additional Procedures*

■ The Second Circuit has held that an *ex parte* determination before a judicial officer prior to seizure "reduces the possibility of an erroneous deprivation", and pre-seizure notice and an opportunity to be heard "further minimizes that risk". *Livonia*, 889 F.2d at 1264; *see also Statewide*, 971 F.2d at 902. In this case, as stated, defendant was provided with the opportunity to be heard before this Court. In fact, defendant has appeared before the Court on two occasions and has made myriad submissions on the issues confronting the Court. The only additional proceeding to which defendant is entitled is a

final adjudication of the forfeiture on the merits. Accordingly, the risk of error is as low as it might be in a pre-trial seizure context.

#### (iii) *Government's Interest*

■ The third factor set forth in *Statewide* requires that in a pre-hearing context, the government's interest be measured by the existence of "exigent" or "extraordinary" circumstances.[5] *Statewide*, 971 F.2d at 903. Exigent circumstances are present when "(1) the seizure is necessary to secure an important governmental or public interest, (2) very prompt action is necessary, and (3) a government official initiated the seizure by applying the standards of a narrowly-drawn statute." *Id.* (citing *Fuentes v. Shevin*, 407 U.S. 67, 91, 92 S.Ct. 1983, 2000, 32 L.Ed.2d 556 (1972)).

#### (a) *Necessity*

■ In this case, the interest to both the government and the public in halting the alleged food stamp fraud is certainly substantial. In fact, unlike the situation in *Statewide*, where "the government's asserted interest in preventing mail fraud and bribery" was belied by their failure to bring an indictment against the defendant, here there is a pending criminal action reflecting the seriousness with which the government views the alleged conduct. *See Statewide*, 971 F.2d at 903. Thus, this action cannot be said to be a "substitute" for a criminal prosecution. *Id.*

■ In assessing whether the seizure "is necessary to secure an important governmental or public interest", the Court must determine whether there is probable cause to believe that defendant has continued to engage in illegal activity. *See id.* In this case, the question of whether there has been continuing activity was not clear to the Court from the parties' submissions. Thus, the

---

5. The government argues that it is not required to show exigent circumstances in a case where, as here, the defendant was provided with pre-seizure notice and an opportunity to be heard. However, in the Court's view this analysis does bear on this case, where the government asks for seizure prior to a full adjudication of the action. In any case, the Court finds that the government has made a showing of exigent circumstances.

Moreover, the Court notes that, to the extent that the government is correct in asserting that defendant's burden in this context is "likelihood of success on the merits", *see Statewide*, 971 F.2d at 905 (cited by the government in support of the proposition that this is the appropriate standard in post-hearing contexts), the Court finds there is no such likelihood in this case.

Court conducted a hearing on this issue. At the hearing, the government presented the testimony of Supervisory Special Agent John Yasek of the Office of the Inspector General ("OIG"), Department of Agriculture. In pertinent part, the testimony revealed the following:

### 1. Statements of Felix Puello

On March 30, 1992, when agents of the OIG executed a search warrant at Puello Meats, they interviewed Felix Puello. During the course of the interview, Puello stated that virtually all of his customers paid for wholesale purchases of meat with food stamps, and that without the illegal acceptance of food stamps, Puello Meats would go out of business. On April 10, 1992, Puello was interviewed by a special agent of the OIG and indicated that Puello Meats was continuing to accept food stamps and that Puello was selling these food stamps to other retailers.

Puello also revealed to the agents that there were other wholesalers who were illegally trafficking in food stamps. Puello identified one of these entities as Juliassa Wholesalers ("Juliassa") at 211 Montrose Avenue, Brooklyn, New York. According to Puello, Juliassa was accepting food stamps through its wholesale operation and redeeming them through a retail operation under the same ownership.

### 2. Present Operation of Puello Meats

At the time of the search warrant, Puello Meats utilized a number of buildings on Remsen Avenue to conduct its business. Currently, it uses the same facilities.

### 3. Juan Bonilla

During its investigation, OIG agents recorded telephone conversations of employees of Puello Meats. Juan Bonilla, a Puello employee, indicated in one of these conversations that Puello Meats would accept food stamps for wholesale shipments of meat. Bonilla is still employed by Puello Meats.

### 4. Jose Puello

Subsequent to the commencement of this action, an individual identifying himself as Felix Puello's brother approached a confidential source of information working with the OIG. The individual indicated to the source that he would be willing to accept food stamps in exchange for wholesale deliveries. Puello Meats transferred a truck to Jose Puello, Felix's brother, in October of 1992.[6]

### 5. Juliassa

OIG surveillance has revealed that on two different days in December, Felix Puello's car was parked outside of Juliassa. Moreover, food safety inspectors of the Department of Agriculture have observed quantities of Puello Meats' products at this location.

Defendant asserts that the above evidence does not amount to probable cause of ongoing criminal activity. In support of this position, defendant points to Yasek's testimony on cross-examination, which indicates that Yasek is not aware of anyone who has paid Felix Puello in food stamps during the ten month period that has elapsed since the search warrant was executed. Defendant also points out the weakness of the government's evidence, including Yasek's multi-layered hearsay testimony and the unsubstantiated allegations regarding Felix Puello's brother, Jose. Finally, defendant notes that Puello Meats has significantly scaled back its operations since the execution of the search warrant in late March.

The Court does not take issue with the fact that the government's proof on the question of continuing criminal activity is not particularly strong. However, as stated, the government need only show that there is probable cause that such activity persists. The Court is of the view that the evidence presented, including Puello's own admission about the continuing activity as well as his apparent presence at Juliassa, does establish the requisite probable cause. Moreover, hearsay testimony is admissible in forfeiture actions. *Statewide,* 971 F.2d 896, 903.

In sum, the government has demonstrated its interest in having some action taken to prevent the continuation of the alleged criminal activity.

---

**6.** The Court did not find Jose Puello's testimony to be credible.

### (b) *Prompt Action Required*

 There are two instances in which prompt action is required in seizing defendant properties: the first is where the defendant can remove the valuable asset and/or cause waste to the property and premises, *see Statewide*, 971 F.2d at 904; and the second is if there is a "reasonabl[e] fear that the property would be 'further used as an instrumentality of crime". *Livonia*, 889 F.2d at 1265 (quoting *United States v. Premises and Real Property at 4492 South Livonia Road*, 667 F.Supp. 79 at 82 n. 1 (W.D.N.Y. 1987)). In this case, the government relies on the latter theory in support of its application and, as stated, the Court has found that there is probable cause to believe that there is continuing illegal activity. Although defendant has pointed out that the government has waited several months before bringing this action, the Court nonetheless finds that in light of the finding of probable cause of continuing illegal activity, prompt action is required in this case.

However, the need for prompt action is not the end of the inquiry. In *Statewide*, the Second Circuit held that continuing criminal activity is not enough, standing alone, to justify "the shutdown of a thriving business." *Statewide*, 971 F.2d at 903. Accordingly, the Court in *Statewide* urged that "whenever possible", district courts should "favor less drastic measures [than outright seizures], such as occupancy agreements, bonds, receiverships, *lis pendens*, or other means for preserving the *status quo ante* seizure until the criminality underlying the claimed forfeiture can be established in the context of a proper criminal proceeding with its attendant constitutional protection to the accused." *Id.* at 905.

 Mindful of this warning in *Statewide*, the Court has explored the possibility of these less drastic means with the parties. *See* Transcript of Civil Order to Show Cause, December 10, 1992, at 7, 16–17, 20. Mr. Puello has admitted that his businesses would not be viable in the absence of the illegal activity, and defendant has offered no evidence to show that his businesses are currently engaged in legitimate activity. Accordingly, the Court has probable cause to believe that there is no such legitimate activity, and, in light of that determination, the utilization of an occupancy agreement or the like would serve no purpose. That is, unless there is some evidence that there is a legitimate business activity transacted at the defendant properties, the Court need not attempt to preserve the *status quo ante* seizure.

In sum, the Court finds that defendant's interest in the continuation of his business is substantial. However, in light of the fact that defendant is apparently not transacting any legitimate business, as well as the fact that defendant was provided with notice and an opportunity to be heard, the Court finds that the government's significant interest in halting the allegedly illegal activity outweighs defendant's interest in this case.

### III.

### *Defendant's Cross–Motions*

#### A. Motion to Stay Action

 Defendant contends that the instant forfeiture action should be stayed pending the disposition of the criminal action against him. In *Statewide*, the Second Circuit, noting the "troublesome fifth amendment problems potentially generated by the government's use of civil forfeiture statutes", encouraged district courts to stay civil forfeiture proceedings pending the completion of related criminal proceedings, "in the absence of extraordinary circumstances." 971 F.2d at 905. In this case, the criminal proceeding involves the same set of facts and circumstances as the forfeiture proceeding. Moreover, there do not appear to be any "extraordinary circumstances" that would militate against a stay. Accordingly, the Court hereby grants defendant's motion to stay this proceeding pending the outcome of the criminal case.

#### B. Government's Characterization of Case

 Defendant argues that the government's characterization of the instant action as one in which there has been a $40,000,000 loss from food stamp fraud is "fundamentally flawed as a matter of law." In support of his

position, defendant cites to *United States v. Garced*, No. Cr. 92–934 (E.D.N.Y.1992), wherein Judge Nickerson, in sentencing a defendant, held that the government had suffered no financial loss as a result of illegal food stamp transactions.

The Court cannot glean from defendant's papers what relief he may seek in this regard. Certainly, the question of profits to the defendant or losses to the government is not related to whether this Court will grant the government's request for a seizure warrant. Judge Nickerson reached this issue in the *Garced* case only because the amount of the loss was relevant to the defendant's sentence. Accordingly, this motion is denied without prejudice to the defendant to explain to the Court what relief he seeks, short of asking the Court not to issue a warrant on this ground.

C. Government's Reliance on Money Laundering Statutes

Defendant argues that because the crux of this forfeiture action and of the companion criminal prosecution is a violation of the Food Stamp Act, 7 U.S.C. § 2024(c), the government cannot prove a violation of 18 U.S.C. §§ 1956 or 1957, a requisite to forfeiture under 18 U.S.C. § 981.

As explained above, the civil forfeiture statute invoked by the government in this case, 18 U.S.C. § 981, authorizes forfeiture of "any property, real or personal, involved in a transaction or attempted transaction in violation of ... Section 1956 or 1957 of [Title 18], or any property traceable to such property." 18 U.S.C. § 981(a)(1)(A). Thus, defendant points out that forfeiture in this case is entirely dependent on a legally sufficient allegation of a violation of section 1956 or 1957.

Defendant properly states that there can be no violation of section 1956 or 1957 unless the property involved in a financial transaction is related to the proceeds of "specified unlawful activity". It was not until October 29, 1992, after the instant action was filed, that food stamp violations became a "specified unlawful activity" under sections 1956 and 1957. Thus, it is defendant's position that "the Amended Complaint cannot transform an alleged food stamp violation into a

money laundering offense, for activity prior to the recent statutory amendment." Defendant's Supplemental Memorandum at 6.

However, the complaint in this case clearly alleges violations of several sections of Title 18 that constitute "specified unlawful activity" under section 1956 and 1957, including sections 641 (theft of public money, property or records), 1341 (mail fraud) and 1343 (wire fraud). Because these statutes cover the allegations in the complaint, defendant's argument that the forfeiture statute cannot apply to the alleged conduct in this case is misplaced.

## CONCLUSION

For the foregoing reasons, the government's application for a warrant to seize the defendant properties pending a full adjudication of this action on the merits is hereby granted. A seizure warrant bearing today's date will be forwarded to the United States Marshal for execution. Defendant's cross-motions are denied, except that the full adjudication of this action will be stayed pending a disposition of the criminal proceeding against defendant.

SO ORDERED.