UNITED STATES of America, Plaintiff,

v.

$200,226.00 IN U.S. CURRENCY,
Defendant.

Civ. No. 94–1073 (JAF).

United States District Court,
D. Puerto Rico.

Sept. 23, 1994.

1416

Jose O. Vazquez–Garcia, Asst. U.S. Atty., Guillermo Gil, U.S. Atty., San Juan, PR, for plaintiff.

Francisco M. Lopez–Romo, San Juan, PR, Ronald I. Strauss, Strauss Schomber & Williams, John May, May & Cohen, Miami, FL, for defendant.

### AMENDED OPINION AND ORDER

FUSTE, District Judge.

On July 12, 1994, this court entered an Opinion and Order denying claimant's motion to dismiss the verified complaint and claimant's motion to suppress evidence and to strike certain allegations from the government's complaint. On that occasion, this court also ordered the claimant to show cause why summary judgment should not enter on behalf of the United States.

After the filing of the Opinion and Order, the claimant has filed several motions and has responded to this court's order of July 12, 1994. The response calls the attention of the court to errors in the order of July 12 and addresses the subject of the entry of summary judgment as a matter of law *sua sponte* after notice to claimant.

The court has revisited the issues and withdraws the original July 12, 1994, opinion. Corrections to the original text have been made, and this Amended Opinion and Order will be entered in lieu of the July 12, 1994, Opinion and Order.

## I.

### Introduction

On September 9, 1993, DEA agents seized $200,226 in United States currency from two carry-on bags which belonged to claimant, Gloria Isabel Echeverry Berrio Bueno Monsalve ("Echeverry"), at the International Airport, Carolina, Puerto Rico. The United States filed this civil action *in rem* under 21 U.S.C. § 881(a)(6), for the forfeiture of the currency, alleging it was drug-related, or represented proceeds from trafficking in controlled substances, or was used to facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. § 881(a)(6). Jurisdiction is based on 28 U.S.C. §§ 1345 and 1355. Claimant alleges that she received the money as a gift from her Italian boyfriend.

Before the court is claimant's motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, a request to strike under Fed.R.Civ.P. 12(f), and claimant's motion to suppress the seized currency, *Docket Document No. 14*.[1] For the reasons outlined

below, the court denies the motions and orders that summary judgment be entered in favor of the government.

## II.

### Facts

The facts of this forfeiture action are simple and have been extracted from the pleadings, affidavits, and documents on file. On September 9, 1993, DEA agents at the Luis Muñoz Marín International Airport, Carolina, Puerto Rico, seized $200,226 in cash, mostly in $20 bills, from two carry-on bags which belonged to claimant, Echeverry, as she was returning to Miami after a two-day vacation in Puerto Rico.[2] The money was wrapped in towels. Claimant was travelling under her mother's name. One of the carry-on bags contained an eyeglass prescription card in the name of Ricardo Elías Echeverry, with a physician's address in Medellín, Colombia. A check by the DEA agents on Ricardo Elías Echeverry revealed that he had a July 1986 criminal record for cocaine trafficking from the Clearwater, Florida, Police Department. When questioned about the currency by the DEA agents, claimant responded that her Italian boyfriend had called that day at her hotel and offered the $200,000 as a gift. An unknown person then delivered the money in a brown bag to the hotel room. Claimant could not confirm her boyfriend's whereabouts, occupation, address or phone number.

The affidavits subscribed by the government witnesses confirm that as petitioner's bags passed through the airport's security checkpoint and X-ray machine, the X-ray machine attendant noted a dark object that

---

1. Petitioner's motions will be treated as Fed.R.Civ.P. 56 motions for summary judgment. The motion to dismiss contains a factual elaboration that transcends the four corners of the complaint. In addition, both the government and petitioner have appended affidavits in support of their respective positions on the motion to suppress. We recognize that, while forfeiture proceedings are nominally civil in nature, they also have a "quasi-criminal" nature, and claimants are entitled to certain of the procedural rights afforded criminal defendants. In particular, the Supreme Court has held that the Fourth Amendment exclusionary rule applies in these cases. *See One 1958 Plymouth Sedan v. Pennsylvania*,

380 U.S. 693, 696, 85 S.Ct. 1246, 1248, 14 L.Ed.2d 170 (1965). Here, petitioner and claimant was not criminally prosecuted. It is only logical to address her civil Fourth Amendment concerns under the civil standard of Rule 56 and not Fed.R.Crim.P. 12(b). Even under the criminal rule, a hearing is not mandatory. *See United States v. Pasciuti*, 793 F.Supp. 373, 377 (D.N.H. 1992).

2. Echeverry had originally planned a longer Puerto Rico stay but, after receiving the money, packed it and departed.

looked suspicious and advised the petitioner that the carry-on bag had to be opened for further inspection. The government claims that following standard operating procedure, permission to open the suitcase was obtained.[3] Upon opening the carry-on bag, the towels and the currency fell onto the conveyor belt. An attending police officer stationed nearby saw the cash and asked petitioner how much money she was carrying. When petitioner confirmed the amount of cash and came up with the boyfriend-gift story, the policeman informed petitioner that he had to hold the currency until Drug Enforcement Administration agents arrived. Petitioner was never placed under arrest. She was free to leave, and left after obtaining a receipt for the money from DEA agents. *See Docket Document No. 16*, Affidavits of Private Guard Vivian Agostini, Police Officer Juan C. Carreras, and DEA Agent Waldo Santiago.

## III.

### *Legal Standards*

### A. *Motion to Dismiss Standard*

A party may move to dismiss an action based only on the pleadings for "failure to state a claim upon which relief can be granted...." Fed.R.Civ.P. 12(b)(6). In assessing a motion to dismiss, "[w]e begin by accepting all well-pleaded facts as true, and we draw all reasonable inferences in favor of the [nonmovant]." *Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962, 971 (1st Cir.1993). However, when matters outside the pleading under scrutiny are brought into play, the Rule 12(b)(6) motion may be treated as a Fed. R.Civ.P. 56 motion for summary judgment.

### B. *Request to Strike: Fed.R.Civ.P. 12(f)*

Fed.R.Civ.P. 12(f) allows the court to strike from the pleadings any "redundant, immaterial, impertinent, or scandalous matter." Motions to strike matters from plead-

ings are disfavored by the courts, *Boreri v. Fiat S.P.A.*, 763 F.2d 17, 23 (1st Cir.1985), and "should not be granted, even in cases where averments complained of are literally within provisions of federal rule providing for striking of redundant, immaterial, impertinent or scandalous matter, in absence of a demonstration that allegations attacked have no possible relation to controversy and may prejudice other party." *Gilbert v. Eli Lilly & Co., Inc.*, 56 F.R.D. 116, 121 (D.P.R.1972). *See* 5A Wright & Miller, *Federal Practice and Procedure: Civil* § 1382 (2d ed. 1990).

### C. *Summary Judgment Standard*

A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50, 106 S.Ct. at 2510–11.

The First Circuit has sanctioned the use of the summary judgment rule by district courts *sua sponte*. First, discovery

---

**3.** The defendant's affidavit negates consent. This is, for all purposes, immaterial. Any indication on the X-ray screen that an object is or may be dangerous to the safety of the flight renders the luggage subject to full hand search. *See* Section C, Exclusionary Rule, p. 5. "[A] visual inspection and limited hand search of luggage which is used for the purpose of detecting weapons or explosives, and not in order to uncover other types of contraband, is a privacy intrusion we believe free society is willing to tolerate." *United States v. Pulido–Baquerizo*, 800 F.2d 899, 902 (9th Cir.1986).

must be sufficiently advanced or it must be apparent that the litigants know what material evidence is relevant.[4] Second,

[w]aiver aside, it is well settled in this circuit that all summary judgment proceedings, including those initiated by the district judge, will be held to the standards enunciated in Rule 56 itself. *See Donate–Romero v. Colorado,* 856 F.2d 384, 387 (1st Cir.1988). Given this benchmark, we think that the notice requirement for *sua sponte* summary judgment demands at the very least that the parties (1) be made aware of the court's intention to mull such an approach, and (2) be afforded the benefit of the minimum 10–day period mandated by Rule 56.

*Stella v. Town of Tewksbury,* 4 F.3d 53, 56 (1st Cir.1993).

**D. Forfeiture Statute: 21 U.S.C. § 881(a)(6)**

21 U.S.C. § 881(a)(6) provides in pertinent part:

The following shall be subject to forfeiture to the United States and no property right shall exist in them:

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter [21 U.S.C. § 801 *et seq.*].

The government has the initial burden to show probable cause that the money was connected with illegal drug transactions. Once this hurdle is met, the burden shifts to the private claimant to demonstrate that the property was not involved in illegal drug transactions. *United States v. Parcels of Property, with Bldg., Appurtenances, and Improvements Located at 255 Broadway, Hanover, Mass.,* 9 F.3d 1000, 1003 (1st Cir. 1993); *United States v. $250,000 in U.S. Currency,* 808 F.2d 895, 897 (1st Cir.1987).

"Probable cause to forfeit requires only a 'reasonable ground for belief of guilt[,] supported by less than prima facie proof but more than mere suspicion' that the property is subject to forfeiture." *Parcels of Property,* 9 F.3d at 1004, *quoting United States v. Parcel of Land and Residence at 28 Emery St., Merrimac, Mass.,* 914 F.2d 1, 3 (1st Cir.1990). The government has a "relatively light burden of showing probable cause" to believe that the subject property is forfeitable, *Parcels of Property,* 9 F.3d at 1004, and need not prove that the money was derived from a particular drug transaction, but only that the currency was "probably derived from illegal drug transactions." *$250,000 in U.S. Currency,* 808 F.2d at 899–900. The court must consider "the totality of the circumstances to evaluate the government's demonstration" of probable cause. *Id.* In so doing, "we review each piece of evidence only to determine whether it is probative, not whether it establishes probable cause standing alone." *Id., quoting United States v. $67,220.00 in U.S. Currency,* 957 F.2d 280, 285 (6th Cir.1992).

**E. Exclusionary Rule**

"Section 202 of the Air Transportation Security Act of 1974, 49 U.S.C. § 1356(a), requires a pre-boarding search of all passengers and their carry-on baggage for weapons and explosives, pursuant to regulations established by the Administrator of the Federal Aviation Administration." *United States v. Sullivan,* 544 F.Supp. 701, 707 n. 5 (D.Me.1982), *aff'd,* 711 F.2d 3 (1st Cir. 1983). An airport X-ray search is justified as an administrative exception to the warrant rule under the Fourth Amendment to insure safety in air travel. *U.S. v. $124,570 U.S. Currency,* 873 F.2d 1240 (9th Cir.1989); *U.S. v. Herzbrun,* 723 F.2d 773 (11th Cir.1984); *United States v. Albarado,* 495 F.2d 799 (2nd Cir.1974); *U.S. v. Davis,* 482 F.2d 893 (9th Cir.1973); *U.S. v. Maldonado–Espinosa,* 767 F.Supp. 1176, 1186 (D.P.R.1991), *aff'd,* 968 F.2d 101 (1st Cir.1992). Acting pursuant to federal regulations, (14 C.F.R. § 108.9 (1988)), security personnel are authorized to

---

**4.** The simple facts of this case do not warrant additional discovery efforts. The litigants know what material evidence can be adduced.

submit every piece of luggage destined to enter an airplane to an X-ray screen search. *$124,570 U.S. Currency*, 873 F.2d at 1242; *Maldonado–Espinosa*, 767 F.Supp. at 1186. Any indication on the X-ray screen that the luggage contains something which appears to be dangerous to the flight, or which cannot be identified as harmless, renders the luggage subject to a full hand search with or without consent until the object can be positively identified as harmless. *Herzbrun*, 723 F.2d at 777; *Maldonado–Espinosa*, 767 F.Supp. at 1186. "It has long been recognized that in the course of conducting a justified administrative search, screeners may uncover contraband completely unrelated to the purposes for which the administrative search was conducted, and such contraband can be admitted against the person in court." *Abel v. U.S.*, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); *Maldonado–Espinosa*, 767 F.Supp. at 1186.

## IV.

### *Discussion*

#### A. *Motion to Suppress*

 Claimant seeks the suppression of the seized currency on the grounds that she did not consent to the search of her luggage and that her detention was in violation of the Fourth Amendment as the government lacked probable cause to believe that she had committed any offense.[5] Claimant's allegations are not persuasive.

 In the context of airport searches, the security personnel is authorized to conduct a full hand search of a piece of luggage without the passenger's consent if the X-ray examination is inconclusive as to the dangerousness of an object. *Maldonado–Espinosa*, 767 F.Supp. at 1186. Evidence found during this search may be admitted against the person in court. *Id.* In this

case, the money was seized after the X-ray machine attendant observed an object which looked suspicious on the machine's screen, opened the carry-on bag, and the money spilled on the conveyor belt. In sum, the currency was legally seized as a valid airport search procedure was followed.

 With regard to claimant's illegal detention argument, we find that it is factually flawed. Claimant was never detained by the security personnel, local police officer or DEA agents. She was told that she was free to leave the premises at any time, and left after obtaining a receipt for the money from DEA agents. *See Docket Document No. 16,* Affidavits of Private Guard Vivian Agostini, Police Officer Juan C. Carreras, and DEA Agent Waldo Santiago. Claimant's self-serving affidavit contradicting the sworn testimonies of Private Guard Agostini, Police Officer Carreras, and DEA Agent Santiago does not create an issue of fact so as to defeat summary judgment. Claimant's affidavit is not sufficient for a jury to return a verdict for claimant as the nonmoving party. The affidavit is not significantly probative in the context of the clear, simple facts of this case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

#### B. *Forfeiture Claim*

 Claimant Echeverry claims that the government does not have probable cause to link the money to drug transactions. Examining the totality of the circumstances, we find that the government has met its burden of showing probable cause.

There are numerous factors that show probable cause in this case. Echeverry's bags contained $200,226 in cash, mostly in $20 bills. Courts have ruled that carrying a large sum of cash is "strong evidence of this [drug-money] relationship even without the presence of drugs or drug paraphernalia."

---

5. Claimant also seeks the suppression of any administrative inquiry statement made by her to police officer Carreras and to DEA agents. She alleges that because she was in custody, the officers were required to read to her the *Miranda* warnings. As stated in the main text, this administrative, routine stop did not amount to a detention. Claimant was free to leave at her will. Moreover, the statements elicited by the officers, which had to deal with the quantity of money and its origin, were not of the incriminating nature requiring the reading of the *Miranda* rights. They did not involve the psychological intimidation that *Miranda* is designed to prevent. *See U.S. v. Doe*, 878 F.2d 1546, 1551 (1st Cir. 1989). Indeed, claimant was never charged with a crime.

*United States v. $215,300 in U.S. Currency,* 882 F.2d 417, 419 (9th Cir.1989), *cert. denied,* 497 U.S. 1005, 110 S.Ct. 3242, 111 L.Ed.2d 752 (1990); *$67,220.00 in U.S. Currency,* 957 F.2d at 285; *United States v. $175,260 in U.S. Currency,* 741 F.Supp. 45, 47 (E.D.N.Y. 1990); *United States v. $319,820 in U.S. Currency,* 620 F.Supp. 1474, 1478 (D.C.Ga. 1985). The money was wrapped in towels to avoid detection. *$67,220.00 in U.S. Currency,* 957 F.2d at 285; *$215,300 in U.S. Currency,* 882 F.2d at 419; *United States v. $175,-260 in U.S. Currency,* 741 F.Supp. 45, 47 (E.D.N.Y.1990). Claimant's destination was Miami, "a well-known center of illegal drug activity." *$67,220.00 in U.S. Currency,* 957 F.2d at 285; *$215,300 in U.S. Currency,* 882 F.2d at 419; *United States v. One 1980 Bertram 58′ Motor Yacht,* 876 F.2d 884, 888 n. 4 (11th Cir.1989); *$319,820 in U.S. Currency,* 620 F.Supp. at 1478. Claimant was travelling under an assumed name and checked no luggage. *See $67,220.00 in U.S. Currency,* 957 F.2d at 285. One of the bags contained an eyeglass prescription from Medellín, Colombia, in the name of Ricardo Elías Echeverry, who had a criminal record for cocaine trafficking from a police department in Florida. Finally, claimant's explanation is incredible. *See $175,260 in U.S. Currency,* 741 F.Supp. at 47–48. While vacationing in Puerto Rico, she received a telephone call from her Italian boyfriend, who asked her if she would like to receive $200,000 as a gift. She consented and an unknown person delivered the cash in brown bags to her hotel room. Then, she packed the money and headed toward the airport, cutting short her planned vacation. Questioned by the DEA agents, Echeverry could not tell her boyfriend's whereabouts, occupation, phone number or address. In short, "the money, combined with other persuasive circumstantial evidence … is sufficient here to establish probable cause." *$215,300 in U.S. Currency,* 882 F.2d at 419–20, *quoting United States v. $93,685.61 in U.S. Currency,* 730 F.2d 571, 572 (9th Cir.) (per curiam), *cert. denied,* 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 61 (1984).

### C. *Motion to Strike*

█ Claimant seeks the elimination of the complaint's section entitled "Prelude to the Facts," which reads as follows:

"The facts giving rise to this complaint are so fantastic that they could be used in the opening scene of a movie, as follows: The phone rings in the hotel room. The part-time Colombian model who arrived the day before from Miami answers it. The caller asks if she would like $200,000.00 cash as a gift. Of course, she sa[ys] yes, and later a man arrive[s] at her hotel room carrying a paper bag full of money, amounting to $200,000 mostly in $20.00 bills. The model had not seen the man before, nor did she know who he was."

Claimant alleges that this statement is immaterial, redundant, and scandalous pursuant to Fed.R.Civ.P. 12(f).

█ Although in the answer to the complaint the claimant denies the assertions in the paragraph at issue on the grounds that they are argumentative, later in the document the claimant admits all of the same facts. *See Docket Document No. 13,* ¶¶ 5 & 9. Therefore, we conclude that the section "Prelude to the Facts" is not redundant, immaterial or scandalous. Absent prejudice to a party, the rule does not punish colorful language.

### V.

### *Conclusion*

In sum, we **DENY** claimant's motions to dismiss, to strike, and to suppress. Pursuant to *Celotex v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the court, *sua sponte,* **ORDERS** the entry of summary judgment on behalf of the government. *Stella v. Town of Tewksbury,* 4 F.3d 53, 56 (1st Cir.1993); *Donate–Romero v. Colorado,* 856 F.2d 384, 387 (1st Cir.1988). A forfeiture judgment over the $200,226.00 shall be entered.

**IT IS SO ORDERED.**