19 F.3d 1435
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
SIXTEEN THOUSAND FIVE HUNDRED AND TWENTY (16,520.00) DOLLARS
IN U.S. CURRENCY, Defendant,
Wesley E. Harshaw, Party-in-Interest Appellant.
 No. 92-4288.
 United States Court of Appeals, Sixth Circuit.
 March 21, 1994.
 
 On Appeal from the United States District Court for the Southern District of Ohio, No. 91-00452; S. Arthur Spiegel, District Judge.
 S.D.Ohio
 AFFIRMED.
 Before: KENNEDY and GUY, Circuit Judges; and FEIKENS, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Defendant-in-rem sixteen thousand five hundred and twenty dollars ($16,520.00) ("the money"), by and through its party-in-interest Wesley E. Harshaw, appeals a District Court judgment of forfeiture issued pursuant to 21 U.S.C. Sec. 881. On appeal, Harshaw argues that the District Court erred in holding that the United States had probable cause to conclude that the money was substantially connected to drug trafficking. For the reasons stated below, we affirm.
 
 I.
 
 2
 On January 19, 1991, the money was seized from Harshaw's car by officers of the Springfield Township, Ohio Police Department. At the time, Valorie Cave, the girlfriend of Harshaw's friend, Thomas Bronaugh, had been driving Harshaw's car when she was stopped by Officer Clayton Smith for speeding. Smith requested Cave's driver's license and, when she opened her purse, Smith observed a baggie containing six or seven grams of marijuana inside the purse. Smith asked Cave to step out of the car and placed her in the rear of his vehicle. Officer Smith looked inside the car and discovered, on the floor in front of the forward passenger seat, a brown paper bag containing the money. He then called other officers to the scene.
 
 
 3
 After reading Cave her Miranda rights, Smith proceeded to ask her questions about the money. Smith testified at trial that Cave seemed unconcerned about the speeding ticket or the drug possession charge and stated, "Just go ahead and write the tickets. I need to get out of here." Joint App. at 61. She appeared quite nervous, however, about the money, and wanted to know if she would get it back. Joint App. at 61, 81. She gave several conflicting stories about the money. First, she said the money belonged to her boyfriend, Bronaugh, and that it was payroll for his towing company. Joint App. at 60. Five minutes later, she said the money was connected to Bronaugh's practice of buying and selling motor vehicles. Id. Detective Terry Root, who had been called to the scene, testified that Cave later told him that the money was derived from Bronaugh's concert promotion company. Joint App. at 80. Bronaugh has two prior convictions for drug trafficking. Joint App. at 18.
 
 
 4
 After Cave gave consent to search the car, Officer Charles Gordon of the Springfield Police and his dog, Harko, came to the scene. Harko "alerted" to a duffle bag on the backseat of the car but no drugs were found. Joint App. at 94. During the road-side interrogation, an unknown individual called the police station inquiring about the arrest of Valorie Cave. Joint App. at 81. Also, Officer Gordon testified that a large Cadillac drove by several times while officers questioned Cave. Joint App. at 82.
 
 
 5
 At the direction of Assistant Chief of Police David Heimhold, the officers seized the money. Joint App. at 104. Heimhold testified that two days after the seizure, he received a call from someone who identified herself as Valorie Cave. Joint App. at 110. The caller told Heimhold that the money really belonged to her other boyfriend Harshaw and that the money came from Harshaw's lottery winnings. Joint App. at 111.
 
 
 6
 The Cincinnati Police Department's drug-sniffing dog, Bronson, performed a sniff on the money. Joint App. at 124. The money was hidden somewhere in one of three rooms, each containing lockers, desks and tables. Joint App. at 124. Bronson searched the rooms until he alerted to a particular locker, the one containing the money.
 
 
 7
 Heimhold subsequently turned the money over to the United States Marshal's Office. Joint App. at 113. The Drug Enforcement Administration filed the instant Complaint of Forfeiture. Harshaw filed a Notice of Claim challenging forfeiture of the money and demanded a jury trial. Both parties stipulated that Harshaw was the owner of the car driven by Cave, and that Harshaw previously won the Ohio State Lottery and annually receives a check for One Hundred and Twenty Five Thousand Dollars ($125,000.00). Joint App. at 18. At the close of the United States' case, the court ruled that there was probable cause to forfeit the money. Harshaw presented witnesses to support an innocent-owner defense. On November 17, 1992, the jury found that Harshaw failed to prove he was the owner of the money. The court entered a final judgment of forfeiture on November 22, 1992. Harshaw timely appealed.
 
 II.
 
 8
 Defendant argues that the United States did not have probable cause to believe that the money was connected to drug trafficking, as required by 21 U.S.C. Sec. 881, and therefore the District Court's judgment of forfeiture was erroneous.
 
 
 9
 The claimant has the burden of proof except that the United States must show probable cause for bringing the forfeiture action. 19 U.S.C. Sec. 1615; 21 U.S.C. Sec. 881(d). "Probable cause means reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." United States v. $67,220.00, 957 F.2d 280, 284 (6th Cir.1992) (citations and inner quotation marks omitted). Probable cause is a question of law for the court. 19 U.S.C. Sec. 1615. To meet its burden, the United States must show probable cause to believe that a substantial connection exists between the money to be forfeited and an illegal drug transaction. $67,220.00, 957 F.2d at 284. The entire record may establish probable cause even if each item of proof is insufficient by itself. Id. Moreover, "[p]robable cause is determined on the basis of information possessed by the government at the time of the forfeiture proceeding, not just the initial seizure." United States v. $53,082.00, 985 F.2d 245, 250 (6th Cir.1993). On appeal, we review a finding of probable cause de novo. $67,220.00, 957 F.2d at 284 (citing United States v. One 1985 Cadillac Seville, 866 F.2d 1142, 1146 (9th Cir.1989)).
 
 
 10
 Several factors relied on by the District Court, Joint App. at 143-44, support a finding of probable cause that the money was substantially connected to drug trafficking: Cave, the only person in the car, had marijuana on her person, see United States v. $83,310.78, 851 F.2d 1231, 1236 (9th Cir.1988) (acknowledging cases in which controlled substances were present in addition to currency); a dog alerted to the duffle bag in the car; a different dog alerted to the money at the police station, see $67,220.00, 957 F.2d at 285 ("We agree that a positive dog reaction is at least strong evidence of a connection to drugs."); Cave appeared nervous when asked about the money, see id. (citing United States v. Knox, 839 F.2d 285, 290 (6th Cir.1988), cert. denied, 490 U.S. 1019 (1989) (holding that nervousness may be considered in establishing reasonable suspicion)); Cave gave conflicting explanations about the money, see $67,220.00, 957 F.2d at 286 (holding that misstatements to police are probative of possible criminal activity); and the money itself--a large amount of cash in a paper bag, see id. at 285 ("[C]arrying a large sum of cash is strong evidence of some relationship with illegal drugs."); United States v. $175,260, 741 F.Supp. 45, 47 (E.D.N.Y.1990) (holding that money being gift-wrapped during Christmas season supports probable cause), cited in $67,220.00, 957 F.2d at 285. In addition, although not specifically cited by the District Court, the fact that Bronaugh, whom Cave twice identified as the owner of the money, has two prior drug trafficking convictions supports a finding of probable cause. See $83,310.78, 851 F.2d at 1236 (holding that money carrier's arrest and conviction record is probative that money is connected to drug activity), cited in $67,220.00, 957 F.2d at 286.
 
 
 11
 Harshaw disputes the probative value of the dog alerts. He challenges the dog alert on the duffle bag in the car on the ground that the dog's scent-detection ability was limited. Harshaw's Br. at 13 (citing Joint App. at 99). He challenges the second dog-alert on the money because, Harshaw asserts, Officer Jim Oliver conceded that most United States currency in circulation is contaminated with controlled substances, and that this fact is commonly known within the police community. Harshaw's Br. at 8, 13 (citing Joint App. at 134).
 
 
 12
 With respect to the duffle-bag alert, the evidence at trial was that "Harko's" training was general in nature and his purpose is primarily one of officer protection. However, he has been trained in drug detection. Joint App. at 99-102. Thus, Harko's reaction has some weight although it is minimal.
 
 
 13
 The second alert, by "Bronson" on the money itself, is more probative. Harshaw mischaracterizes Oliver's testimony about currency contamination. Oliver did not testify that most U.S. currency in circulation contains cocaine residue but rather that "[t]he large amounts of money that [he] come[s] in contact with do." Joint App. at 135. Given Officer Oliver's job in a narcotics unit as handler of a dog specially trained in drug-detection, frequent encounters with drug-tainted money is unremarkable. As to the reliability of the dog-alert, the substantial drug-detection training of Bronson and Officer Oliver are well established in the record. Joint App. at 118-23. This Court has held that a reliable dog's alert on currency is strong evidence of a drug transaction. Compare United States v. $215,300, 882 F.2d 417, 419 (9th Cir.1989), cert. denied, 497 U.S. 1005 (1990) (holding that alert by reliable dog is probative of probable cause) with $67,220.00, 957 F.2d at 285 (holding that dog-alert evidence weak where dog's reliability not established).
 
 
 14
 Viewing the evidence as a whole, we conclude that probable cause was established. There are a number of similarities between this case and United States v. $67,220.00, 957 F.2d 280 (6th Cir.1992) (cited frequently above). This Court held that the United States had probable cause to forfeit a large amount of cash discovered on the claimant at the airport. The factors relied on by this Court were that the claimant was destined for Miami, a drug source city, arrived late, appeared nervous, carried a large amount of cash in his pockets and waistband, lied about the amount and source of the money, and that a drug-sniffing dog may have alerted to the cash and luggage. Id. at 286. Although the present case does not involve a late-arriving passenger to Miami, it involves two factors not present in $67,220.00: the presence of controlled substances and the established reliability of the dog that alerted to the money. Both of these factors are significant. We conclude that the totality of the evidence known to the United States at the time of the initiation of the forfeiture proceeding, taken together, established probable cause that the money was substantially connected to drug trafficking.
 
 III.
 
 15
 For the foregoing reasons, the District Court's judgment of forfeiture is AFFIRMED.
 
 
 
 *
 The Honorable John Feikens, Senior United States District Judge for the Eastern District of Michigan, sitting by designation